UNITED STATES DISTRCT COURT
EASTERN DISTRICT OF TENNESSEE

STATE OF TENNESSEE, *ex rel.* ROBERT E.
COOPER, JR., Attorney General and Reporter,

        Plaintiff,

        v.

ESCAPES!, INC., an Arkansas corporation,

ESCAPES TRAVEL CHOICES, LLC,
an Arkansas limited liability company,

ETOURANDTRAVEL, INC., a Florida corporation,

FESTIVA DEVELOPMENT GROUP, LLC, d/b/a Festiva
Adventure Club, a Nevada limited liability company,

FESTIVA REAL ESTATE HOLDINGS, LLC, f/k/a
Festiva Resorts, LLC, a Nevada limited liability company,

FESTIVA RESORTS ADVENTURE CLUB MEMBERS'
ASSOCIATION, INC.,
a South Carolina not for profit corporation,

HUMAN CAPITAL SOLUTIONS, LLC, f/k/a FESTIVA
RESORT SERVICES, INC.,
a Nevada limited liability company,

PATTON HOSPITALITY MANAGEMENT, LLC,
f/k/a FESTIVA MANAGEMENT GROUP, LLC
a Nevada limited liability company,

RESORT TRAVEL & XCHANGE, LLC, a/k/a RTX,
f/k/a FESTIVA TRAVEL & XCHANGE, LLC, f/k/a FTX,
a Nevada limited liability company,

ZEALANDIA CAPITAL, INC., f/k/a SETI
MARKETING, INC., a Nevada corporation,

ZEALANDIA HOLDING COMPANY, INC.,
f/k/a FESTIVA HOSPITALITY GROUP, INC.,
a Nevada limited liability company,

    and

DONALD KEITH CLAYTON,

Case No. 2:13-cv-343

**COMPLAINT FOR
PERMANENT
INJUNCTIVE AND
OTHER EQUITABLE
AND STATUTORY
RELIEF**

HERBERT HOOVER PARTICK, Jr., and )
)
RICHARD ALLEN HARTNETT, )
)
all individually, and all also d/b/a 811 Development )
Corporation, Equivest Vacation Club, Escapes! Escapes, )
Inc., Escapes Travel Club, LLC, Etourandtravel, Inc., )
Festiva Adventure Club, Financial Information Services, )
Inc., Festiva Development Group, Festiva Hospitality )
Group, Inc., Festiva Resorts Services, Inc., Festiva Resorts )
Adventure Club Members' Association, Inc., Festiva )
Resorts, LLC, Festiva Sailing Vacations, Inc., Festiva )
Travel & Xchange, FTX, Human Capital Solutions, Inc., )
Kosmas Group International, Inc., Peppertree Vacation )
Club, Resort Management Services, Inc., Resort Travel )
& Xchange, LLC, RTX, SETI Marketing, Inc., Zealandia )
Capital, Inc., Zealandia Holdings, LLC, and Zealandia )
Holding Company, Inc., )
)
            Defendants, )
)
        and )
)
811 DEVELOPMENT CORPORATION, )
a Florida corporation, )
)
FESTIVA SAILING VACATIONS, INC., )
a Nevada corporation, )
)
FINANCIAL INFORMATION SERVICES, INC., )
a Florida corporation, )
)
KOSMAS GROUP INTERNATIONAL, INC., )
a Florida corporation, )
)
RESORT MANAGEMENT SERVICES, INC., )
a Florida corporation, )
)
ZEALANDIA HOLDINGS, LLC, )
a Nevada limited liability company, and )
)
VARIOUS CLAYTON AND PATRICK )
FAMILY TRUSTS 1 – 10, )
)
            Relief Defendants. )

Plaintiff, State of Tennessee, by and through Attorney General Robert E.

Cooper, Jr. ("Attorney General" or "State"), and on behalf of Steven Majchrzak, Acting

2

Director ("Director") of the Tennessee Division of Consumer Affairs, alleges:

1. The Attorney General brings this civil law enforcement action under the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108 ("Telemarketing Act"), and the Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. §§ 47-18-101-125 ("TCPA") to obtain injunctive relief, rescission or reformation of contracts, restitution, disgorgement of ill-gotten gains, and other equitable and statutory relief for Defendants' acts or practices in violation of the Telemarketing Act's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310, and the TCPA.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 15 U.S.C. § 6103(a), and supplemental jurisdiction over the state law claims brought by the State of Tennessee under 28 U.S.C. § 1367.

3. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), 15 U.S.C. § 53(b) and (c), and 15 U.S.C. § 6103(e).

## PLAINTIFF

4. Plaintiff, State of Tennessee, is one of the fifty sovereign states of the United States. Robert E. Cooper, Jr., is the Attorney General and Reporter of the State of Tennessee and has been duly appointed to serve as Attorney General by the Tennessee Supreme Court.

5. The Attorney General is authorized by Section 6103(a) of the Telemarketing Act to file this action as *parens patriae* in federal district court to enjoin violations of the TSR, and by Section 108 of the TCPA, to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, disgorgement of ill-gotten gains, and other equitable and statutory relief for Defendants' acts or

3

practices in violation of the TSR and the TCPA.

6.      The Attorney General and the Director have reason to believe that
Defendants have violated and continue to violate the TSR and the TCPA by
engaging in, and assisting and facilitating the commission of deceptive and abusive
marketing and sales acts and practices in whole or in part in Tennessee and
elsewhere, and that this enforcement action is in the public interest.

## DEFENDANTS

### The Festiva Entities

7.      Defendant ESCAPES!, INC., is an Arkansas corporation with a
principal place of business at 903 North 47th Street, Suite 300, Rogers, Arkansas.
Escapes!, Inc., has transacted and continues to transact business in this District and
is authorized to do business in the State of Tennessee as a foreign corporation.

8.      Defendant ESCAPES TRAVEL CHOICES, LLC, is an Arkansas
corporation with a principal place of business at One Vance Gap Road, Asheville,
North Carolina. Escapes Travel Choices, LLC, has transacted and continues to
transact business in this District and is authorized to do business in the State of
Tennessee as a foreign limited liability company.

9.      Defendant ETOURANDTRAVEL, INC., is a Florida corporation with a
mailing address of One Vance Gap Road, Asheville, North Carolina, and a principal
place of business at 3626 Quadrangle Blvd., Suite 300, Orlando, Florida.
Etourandtravel, Inc., has transacted and continues to transact business in this District.

10.     Defendant FESTIVA DEVELOPMENT GROUP, LLC, d/b/a Festiva
Adventure Club, is a Nevada limited liability company with a principal place of
business at One Vance Gap Road, Asheville, North Carolina. Festiva Development

4

Group, LLC, has transacted and continues to transact business in this District and is authorized to do business in Tennessee as a foreign limited liability company.

11.    Defendant FESTIVA REAL ESTATE HOLDINGS, LLC, f/k/a Festiva Resorts, LLC, is a Nevada limited liability company with a principal place of business at One Vance Gap Road, Asheville, North Carolina. Festiva Real Estate Holdings, LLC, has transacted and continues to transact business in this District and is authorized to do business in Tennessee as a foreign limited liability company.

12.    Defendant FESTIVA RESORTS ADVENTURE CLUB MEMBERS' ASSOCIATION, INC., is a not for profit South Carolina corporation with a principal place of business at One Vance Gap Road, Asheville, North Carolina. Festiva Resorts Adventure Club Members' Association, Inc., has transacted and continues to transact business in this District and is authorized to do business in Tennessee as a foreign corporation.

13.    Defendant HUMAN CAPITAL RESOURCES, INC., f/k/a Festiva Resort Services, Inc., is a Nevada corporation with its principal place of business at One Vance Gap Road, Asheville, North Carolina. Human Capital Resources, Inc., has transacted and continues to transact business in this District.

14.    Defendant PATTON HOSPITALITY MANAGEMENT, LLC, f/k/a Festiva Management Group, LLC, is a Nevada limited liability company with a principal place of business at One Vance Gap Road, Asheville, North Carolina. Patton Hospitality Management, LLC, has transacted and continues to transact business in this District and is authorized to do business in Tennessee as a foreign limited liability company.

5

15. Defendant RESORT TRAVEL & XCHANGE, LLC, a/k/a RTX, f/k/a Festiva Travel & Xchange, LLC, and FTX, is a Nevada corporation with a principal place of business at 521 College Street, Asheville, North Carolina, and a mailing address at One Vance Gap Road, Asheville, North Carolina. Resort Travel & Xchange, LLC, has transacted and continues to transact business in this District and is authorized to do business in Tennessee as a foreign limited liability company.

16. Defendant ZEALANDIA CAPITAL, INC., f/k/a SETI Marketing, Inc., is a Nevada corporation with a principal place of business at One Vance Gap Road, Asheville, North Carolina. Zealandia Capital, Inc., has transacted and continues to transact business in this District and is authorized to do business in the State of Tennessee as a foreign corporation.

17. Defendant ZEALANDIA HOLDING COMPANY, INC., f/k/a Festiva Hospitality Group, Inc., is a Nevada corporation with a principal place of business at One Vance Gap Road, Asheville, North Carolina. Zealandia Holding Company, Inc., has transacted and continues to transact business in this District.

18. All the entity defendants named in this Complaint, Escapes!, Inc., Escapes Travel Choice, LLC, Etourandtravel, Inc., Festiva Development Group, LLC, d/b/a Festiva Adventure Club, Festiva Real Estate Holdings, LLC, f/k/a Festiva Resorts, LLC, Festiva Resorts Adventure Club Members' Association, Inc., Human Capital Resources, Inc., f/k/a Festiva Resort Services, Inc., Patton Hospitality Management, LLC, f/k/a Festiva Management Group, LLC, Resort Travel & Xchange, LLC, a/k/a RTX, f/k/a Festiva Travel & Xchange, LLC, f/k/a FTX, Zealandia Capital, Inc., f/k/a SETI Marketing, Inc., Zealandia Holding Company, Inc., f/k/a Festiva Hospitality Group, Inc., (collectively "Festiva Entities"), are

6

alleged in the alternative to have assisted and facilitated in the unlawful acts and practices alleged in this Complaint, to have received ill-gotten funds that are the proceeds of the unlawful acts or practices alleged in this Complaint, and have no legitimate claim to those funds.

## The Individual Festiva Defendants

19.     Defendant DONALD KEITH CLAYTON ("Clayton") is an owner, operator, officer, and principal of the Festiva Entities, and a resident of North Carolina. At all material times, Clayton has been actively involved in the day-to-day operations of the Festiva Entities, and has transacted and continues to transact business in this District. In connection with the matters alleged in this Complaint, Clayton, acting alone or in concert with others, has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Festiva Entities, and has assisted in and facilitated the same, including the unlawful acts and practices alleged in this Complaint.

20.     Defendant HERBERT HOOVER PATRICK, JR. ("Patrick") is an owner, operator, officer, and principal of the Festiva Entities, and a resident of North Carolina. At all material times, Patrick has been actively involved in the day-to-day operations of the Festiva Entities, and has transacted and continues to transact business in this District. In connection with the matters alleged in this Complaint, Patrick, acting alone or in concert with others, has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Festiva Entities, and has assisted in and facilitated the same, including the unlawful acts and practices alleged in this Complaint.

7

21.     Defendant RICHARD ALLEN HARTNETT ("Hartnett") is an owner,
operator, officer, and principal of the Festiva Entities, and a resident of South
Carolina. At all material times, Hartnett has been actively involved in the day-to-day
operations of the Festiva Entities, and has transacted and continues to transact
business in this District. In connection with the matters alleged in this Complaint,
Hartnett, acting alone or in concert with others, has formulated, directed, controlled,
had the authority to control, or participated in the acts and practices of the Festiva
Entities, and has assisted in and facilitated the same, including the unlawful acts and
practices alleged in this Complaint. Clayton, Patrick, and Hartnett, together with the
Festiva Entities are collectively "Festiva" or "Defendants."

## RELIEF DEFENDANTS

22.     Relief Defendant 811 DEVELOPMENT CORPORATION is a Florida
corporation with a mailing address of One Vance Gap Road, Asheville, North
Carolina, and a principal place of business at 3626 Quadrangle Blvd., Suite 300,
Orlando, Florida. On information and belief, 811 Development Corporation has
transacted and continues to transact business in this District, and has received ill-
gotten funds that are the proceeds of the unlawful acts or practices alleged in this
Complaint, and it has no legitimate claim to those funds.

23.     Relief Defendant FESTIVA SAILING VACATIONS, INC. ("FSV"), is a
Nevada corporation with its principal place of business at One Vance Gap Road,
Asheville, North Carolina. On information and belief, FSV has transacted and
continues to transact business in this District, and has received ill-gotten funds that
are the proceeds of the unlawful acts or practices alleged in this Complaint, and it
has no legitimate claim to those funds.

8

24. Relief Defendant FINANCIAL INFORMATION SERVICES, INC., ("FIS"), is a Florida corporation with a mailing address of One Vance Gap Road, Asheville, North Carolina, and a principal place of business at 3626 Quadrangle Blvd., Suite 300, Orlando, Florida. On information and belief, FIS has transacted and continues to transact business in this District, and has received ill-gotten funds that are the proceeds of the unlawful acts or practices alleged in this Complaint, and it has no legitimate claim to those funds.

25. Relief Defendant KOSMAS GROUP INTERNATIONAL, INC. ("Kosmas"), is a Florida corporation with a mailing address of One Vance Gap Road, Asheville, North Carolina, and a principal place of business at 3626 Quadrangle Blvd., Suite 300, Orlando, Florida. On information and belief, Kosmas has transacted and continues to transact business in this District, and has received ill-gotten funds that are the proceeds of the unlawful acts or practices alleged in this Complaint, and it has no legitimate claim to those funds.

26. Relief Defendant RESORT MANAGEMENT SERVICES, INC. ("RMS"), is a Florida corporation with a mailing address of One Vance Gap Road, Asheville, North Carolina, and a principal place of business at 3626 Quadrangle Blvd., Suite 300, Orlando, Florida. On information and belief, RMS has transacted and continues to transact business in this District, and has received ill-gotten funds that are the proceeds of the unlawful acts or practices alleged in this Complaint, and it has no legitimate claim to those funds.

27. Relief Defendant ZEALANDIA HOLDINGS, LLC, is a Nevada corporation with its principal place of business at One Vance Gap Road, Asheville, North Carolina. On information and belief, Zealandia Holdings, LLC, has transacted and continues to

9

transact business in this District, and has received ill-gotten funds that are the proceeds of the unlawful acts or practices alleged in this Complaint, and it has no legitimate claim to those funds.

28.    Relief Defendants VARIOUS CLAYTON AND PATRICK FAMILY TRUSTS 1-10, on information and belief, were created by Clayton and Patrick beginning in 2012 as a result of learning that Festiva was under investigation by multiple state attorneys general regarding unfair and deceptive business practices.  Since learning of these investigations, Clayton and Patrick have been diverting monies and other assets out of the Festiva Entities and into various known and unknown private family trusts for the benefit of themselves, their spouses, and their children, among others.  Such trusts, herein referred to as Various Clayton and Patrick Family Trusts 1-10 have received monies which include income generated or received by Festiva as a result of unlawful business acts and practices, including those occurring in this District.  The Various Clayton and Patrick Family Trusts 1-10 have received ill-gotten funds that are the proceeds of the unlawful acts or practices alleged in this Complaint, and they have no legitimate claim to those funds.

**COMMERCE**

29.    At all times relevant to this Complaint, Clayton, Patrick, Hartnett, and the Festiva Entities have maintained a substantial course of trade or business in the offering for sale and sale of goods or services, including via the telephone, in or affecting the conduct of "trade" or "commerce" in Tennessee and nationwide.

10

## COMMON ENTERPRISE AND INDIVIDUAL PARTICIPATION

30. At all material times, Clayton, Patrick, and Hartnett, individually, and together with the Festiva Entities, have operated together as a common enterprise while engaging in the deceptive and abusive acts and practices and other violations of the laws alleged in this Complaint, and have conducted such alleged acts and practices through an interrelated network of entities, affiliates, and aliases that have common or shared owners, employees, executives, advertising, company logos, business practices, legal counsel, letterhead, customer service, collection, expertise, offices, telemarketing licenses, telecommunication providers, Internet providers, testimonials, and telemarketing scripts, and have so comingled funds and assets in conducting the deceptive and abusive acts and practices described in this Complaint, that each of them is jointly and severally liable for the deceptive and abusive acts and practices and violations of the law alleged below.

31. Patrick, Clayton, and Hartnett are also jointly and severally liable for the conduct of the Festiva Entities because each had the authority to formulate, direct, or control the activities of the Festiva Entities, or has participated in the misrepresentations and other misconduct of the Festiva Entities, and knew or should have known of the misrepresentations and other misconduct of the Festiva Entities.

32. Clayton, Patrick, and Hartnett, together with the Festiva Entities, are alleged in the alternative to have assisted in and facilitated the unlawful acts and practices alleged in this Complaint, or to have received ill-gotten funds that are the proceeds of the unlawful acts or practices alleged in this Complaint, and have no legitimate claim to those funds.

11

## BACKGROUND OF THE FESTIVA ENTITIES

33.    On or about August 14, 2000, Clayton and Patrick formed Festiva Resorts, LLC. At all material times, Festiva Resorts, LLC, has been engaged in the sales and marketing of timeshares and vacations to consumers. Festiva Resorts, LLC, became a wholly owned subsidiary of Festiva Development Group, LLC ("FDG"), on or about March 29, 2011. On or about January 30, 2012, Clayton and Patrick, acting through FDG, changed Festiva Resorts, LLC's name to Festiva Real Estate Holdings, LLC ("Festiva Resorts"), and made Hartnett its Vice President.

34.    Clayton and Patrick served as Festiva Resorts' managing members from its inception until approximately June 26, 2008. Clayton continues to serve as Festiva Resorts' Chief Executive Officer, and Patrick continues to serve as its President.

35.    Since its inception, and continuing through the present, Festiva Resorts has placed or caused to be placed, outbound telephone calls to Tennessee consumers and others, including outbound calls originating within the State of Tennessee, for the purpose of selling goods or services, including timeshares and vacations.

36.    On or about June 22, 2001, Clayton and Patrick formed Festiva Resort Services, Inc. ("FRS"). At all material times, Clayton and Patrick have served as the owners, operators, officers, and directors of FRS. On or about May 25, 2005, Hartnett became an officer of FRS. At all material times, FRS has provided administrative support to Clayton, Patrick, and Festiva Resorts, and later, to Hartnett and the Festiva Entities.

12

37.     At all material times, FRS has employed and supervised personnel working for Clayton, Patrick, Hartnett, and the Festiva Entities, including personnel engaged in the sale and marketing of goods and services, including timeshares and vacations. On or about December 29, 2006, FRS was acquired by Festiva Hospitality Group, Inc. ("Festiva Hospitality"). On or about January 22, 2013, Clayton and Patrick, acting through Festiva Hospitality (n/k/a Zealandia Holding Company, Inc.), changed FRS' name to Human Capital Solutions, Inc. ("Human Capital").

38.     On or about September 4, 2003, Festiva Resorts registered as a telemarketer with the Federal Trade Commission ("FTC"). At the time of its FTC registration, Festiva Resorts paid for access to over 300 area codes in the United States, which included Tennessee area codes 423, 615, 731, 865, 901, and 931. To date, Festiva Resorts has listed over 60 different telemarketers who were or are authorized to place telemarketing calls on its behalf.

39.     On or about July 15, 2004, Clayton and Patrick formed Festiva Hospitality Group, Inc. At all materials times, Clayton and Patrick have served as Festiva Hospitality's owners, operators, officers, and directors. Since its inception, Festiva Hospitality has been engaged in the sales and marketing of timeshares and vacations.

40.     Beginning in 2006, Festiva Hospitality began to acquire ownership and management interests in other Festiva entities. At all material times, Festiva Hospitality has served as a d/b/a name or umbrella organization for other Festiva entities. In 2013, Clayton, Patrick, and Hartnett changed Festiva Hospitality's name to Zealandia Holding Company, Inc., but continue to do business as Festiva Hospitality.

13

41.     Since its inception, Festiva Hospitality, directly and through the Festiva Entities it owned and controlled, placed or caused to be placed, outbound telephone calls to Tennessee consumers and others, including telephone calls originating in Tennessee, for the purpose of selling goods or services, including timeshares and vacations.  In May 2008, Hartnett became Vice President of Festiva Hospitality, and continuously served as Vice President until 2013.

42.     On or about March 9, 2005, Clayton and Patrick formed SETI Marketing, Inc.  At all material times, SETI has been engaged in the sale and marketing of goods and services, including timeshares and vacations, and later, in the collection of accounts.  In 2010, Hartnett became an officer of SETI.  On or about February 15, 2012, Clayton, Patrick, and Hartnett changed SETI's name to Zealandia Capital, Inc.

43.     On or about March 24, 2005, Clayton and Patrick formed the Festiva Development Group, LLC ("FDG").  FDG is the declarant for, and administers, the Festiva Adventure Club.  From time to time, FDG has used "Festiva Adventure Club" as an assumed name.

44.     At all material times, FDG has been engaged in the sale and marketing of timeshares and vacations.  On or about June 26, 2008, FDG became the sole managing member of Festiva Resorts, and on or about March 29, 2011, wholly acquired Festiva Resorts.

45.     On or about November 25, 2008, Clayton and Patrick registered FDG in Tennessee as a foreign limited liability company.  On or about June 30, 2009, Clayton and Patrick registered FDG as a telemarketer with the State of Tennessee.  In its Tennessee telemarketing registration, FDG identified "Festiva Resorts" as the

14

name it would use when contacting the public. FDG did not list any assumed names in its Tennessee telemarketing registration.

46.     On or about March 24, 2005, Clayton and Patrick formed Festiva Management Group, LLC ("Festiva Management"). At all material times, Festiva Management has been engaged in operating Festiva properties, including properties allegedly available for use by Festiva Adventure Club members. In 2007, Clayton and Patrick changed Festiva Management's name to Patton Hospitality Management, LLC, and caused it to become a wholly owned subsidiary of Festiva Hospitality.

47.     When Clayton and Patrick formed Festiva Development in 2005, they also created the Festiva Adventure Club. The Festiva Adventure Club is a purported interval vacation membership club whereby consumers are supposed to be able to take vacations at Festiva properties based on the number of "points" they own in the Festiva Adventure Club. On or about November 10, 2011, Clayton and Patrick registered "Festiva Adventure Club" with the Tennessee Secretary of State as an assumed name to be used by FDG.

48.     On or about July 13, 2006, in conjunction with their creation of the Festiva Adventure Club, Clayton and Patrick created the Festiva Resorts Adventure Club Members' Association, Inc. ("FRACMA"). FRACMA operates as a trust which holds the timeshare interests that are supposed to be made available to Festiva Adventure Club members.

49.     At all material times, Clayton, Patrick, Hartnett, and the Festiva Entities have used FRACMA to buy timeshares and to sell goods and services, including vacations, to persons outside of the Festiva Adventure Club membership,

15

including members of the general public. At all material times, Clayton and Patrick have continuously served as directors of FRACMA, along with various Festiva employees, including, from time to time, Harnett. On or about December 5, 2008, Clayton and Patrick registered FRACMA in Tennessee as a foreign corporation.

50.     On or about September 28, 2011, Clayton, Patrick, and Hartnett created Festiva Travel & Xchange, LLC, a/k/a FTX. On or about April 24, 2013, Clayton, Patrick and Hartnett, acting through Zealandia Holding Company, Inc. (f/k/a Festiva Hospitality), registered Festiva Travel & Xchange, a/k/a FTX (n/k/a Resort Travel & Xchange, a/k/a RTX), in Tennessee as a foreign limited liability company. Resort Travel & Xchange was created to exchange vacation benefits within the Festiva enterprise, and, on a limited basis, outside the Festiva enterprise.

51.     Since at least 2010, Escapes!, Inc., has directly and actively participated in Festiva's sales and marketing of timeshares and vacations, including telemarketing, or has assisted and facilitated the same, and has engaged in the unlawful acts and practices alleged in this Complaint. During 2013, Patrick became its Chief Executive Officer and serves as one of its directors.

52.     Since at least 2010, Escapes Travel Choices, LLC, has directly and actively participated in Festiva's sales and marketing of timeshares and vacations, including telemarketing, or has assisted and facilitated the same, and has engaged in the unlawful acts and practices alleged in this Complaint. During 2013, Patrick became its Chief Executive Officer and serves as one of its directors.

53.     Since at least 2012, Etourandtravel, Inc., has directly and actively participated in Festiva's sales and marketing of timeshares and vacations, including

16

telemarketing, or has assisted and facilitated the same, and has engaged in the unlawful acts and practices alleged in this Complaint. During 2013, Patrick became its Chief Executive Officer and serves as one of its directors.

54. On information and belief, Zealandia Holding Company, Inc., (f/k/a Festiva Hospitality), wholly owns or maintains a controlling or managerial interest in all Festiva Entities.

## DEFENDANTS' COURSE OF CONDUCT

55. At all material times, Defendants have been in the business of selling and marketing goods and services, including timeshares and vacations, and in operating and supporting the Festiva Adventure Club. Clayton, Patrick, and Hartnett, together with the Festiva Entities, directly and through their agents, contact and solicit consumers through, *inter alia*, unsolicited telephone calls, direct mailings to consumers, sweepstakes, solicitation forms, electronic mail, through the Internet, or in person, and have contracted with one another, and with third parties, to so market and sell such goods and services, including timeshares and vacations, into Tennessee, and from within Tennessee.

56. Clayton, Patrick, and Hartnett are veterans of the timeshare industry, and have sold or overseen the sale of hundreds of thousands of dollars of timeshares and other vacation products to consumers in Tennessee and elsewhere.

57. Since at least 2000, Clayton and Patrick, with assistance from Hartnett, began acquiring older, neglected or distressed second or third generation timeshare properties and developer's rights from timeshare owners or developers.

58. When Festiva Resorts, LLC, was formed in 2000, Clayton and Hartnett faced significant difficulties in convincing consumers to purchase timeshare

17

interests in their properties. In addition, shortly after acquiring its first two timeshare properties from Equivest, Festiva Resorts, LLC, began to generate consumer complaints regarding accelerated collection of Equivest membership fees, which culminated in the involvement of the North Carolina Attorney General in 2003.

59.     Clayton and Patrick began marketing timeshares to Tennessee consumers shortly after forming Festiva Resorts in 2000. At that time, timeshare sales had become heavily regulated due to consumer abuses in the market, and most states, including Tennessee, had enacted laws specifically designed to protect consumers purchasing timeshares.

60.     In the mid 2000s, after acquiring a number of timeshares and timeshare projects, Clayton and Patrick decided to create the Festiva Adventure Club, which was based on a "points" system, rather than on direct timeshare purchases by consumers. Consumers who purchased such points would become "members" in the Festiva Adventure Club, and the number of points purchased would correspond to an interest in a real estate trust (FRACMA) holding title to a number of timeshare weeks in various timeshare resorts. Today, those timeshare resorts are located in approximately ten states and a few places in the Caribbean. Festiva Adventure Club members are supposed to be able to use their points to reserve an interval of vacation time from one of the trust resorts.

61.     Throughout the mid 2000s, Clayton, Patrick, and later Hartnett, continued acquiring timeshare interests for the Festiva Entities, including timeshares at the Laurel Point Resort, located near Gatlinburg, Tennessee. As the Festiva Entities continued to acquire additional timeshare interests, they also

18

acquired an enormous captive base of existing timeshare owners whom they could solicit to purchase their goods and services and convert to their points-based program.

62.    By structuring ownership of the Festiva Adventure Club as a points-based membership program, Clayton, Patrick, Hartnett, and the Festiva Entities are able to avoid the application of state timeshare laws and the application of related transparency and accountability requirements in those laws. Furthermore, this business model permits Clayton, Patrick, Hartnett, and the Festiva Entities to avoid accounting to the Festiva Adventure Club membership regarding Festiva's business decisions and allocations of income.

63.    Clayton, Patrick, Harnett, and the Festiva Entities have also obtained control of the governing councils or boards at particular resorts where they hold a majority interest, and have caused those governing bodies to enter into lucrative contracts with related Festiva entities or affiliates, ensuring a continuous and steady income stream for themselves and their companies.

## THE FTC TELEMARKETING SALES RULE

64.    In 1995, the FTC adopted the original TSR after Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act. The FTC amended the TSR extensively in 2003. *See* 16 C.F.R. § 310.

65.    The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the performance, efficacy, nature, or central characteristics of the goods or services that are the subject of a sales offer. 16 C.F.R. § 310.3(a)(2)(iii).

19

66. Among other things, the 2003 amendments to the TSR established a National Do Not Call Registry, maintained by the FTC (the "DNC Registry" or "Registry"), of the phone numbers of consumers who do not wish to receive certain types of telemarketing calls.

67. Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at www.donotcall.gov.

68. Consumers who receive telemarketing calls to their registered numbers can complain of Registry violations the same way they registered, through a toll-free telephone call, or over the Internet at www.donotcall.gov, or otherwise by contacting law enforcement authorities.

69. Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. § 310.2(u).

70. The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to numbers on the Registry in violation of the TSR. 16 C.F.R. § 310.4(b)(1)(iii)(B).

71. The TSR requires telemarketers making an outbound telephone call to disclose truthfully, promptly, and in a clear and conspicuous manner, among other things, the identity of the seller and the nature of the goods or services. 16 C.F.R. § 310.4(d)(1) and (3).

72. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an "unfair or deceptive act or practice" in or affecting commerce, in

violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and as such, constitutes a violation of the TCPA. *See* Tenn. Code Ann. § 47-18-115.

## VIOLATIONS OF THE LAW

### Violations of the TSR

#### Festiva Calls Consumers on the National Do Not Call Registry

73.     In numerous instances, Festiva has called and continues to place numerous calls, to consumers who have their phone numbers listed on the DNC Registry.

74.     In numerous instances, Festiva has called, and continues to call consumers who have told Festiva they have registered their phone numbers on the DNC Registry.

#### Festiva Calls Consumers Who Asked Festiva Not to Call

75.     In numerous instances, Festiva has called, and continues to call consumers who previously requested that Festiva not call them.

### Festiva's Deceptive Telemarketing Practices

76.     Festiva initiates outbound telephone calls to consumers in Tennessee, and throughout the United States from Tennessee, directly, and through agents, to induce the purchase of Festiva's goods and services, including timeshares and vacations.

77.     Each Defendant is a "telemarketer" engaged in "telemarketing," as defined by the TSR, 16 C.F.R. § 310.2.

78.     Clayton, Patrick, Hartnett, and the Festiva Entities have engaged in telemarketing by a plan, program, or campaign conducted to induce the purchase of goods or services by use of one or more telephones and which involves more than

21

one interstate telephone call.

79.     In numerous instances, Festiva contacts consumers by telephone to inform them they have won, or been selected to receive, a prize or gift, ranging from Android tablets and gift cards to cruises and vacations.  While the purpose of Festiva's telephone calls is to lure consumers to one of their sales centers for a lengthy, high pressure sales pitch, Festiva's telemarketing calls initially focus on building excitement regarding the consumer's prize or gift.

80.     Since at least 2006, and continuing through the present, the Festiva Entities' telemarketers would excitedly announce words to the following effect, at or near the beginning of outbound calls:

*"You have been selected to receive a 4 day/4 night Carnival cruise which you have 12 months to use!"*

*"You entered to win [a prize] and you have been selected to receive a 4 day/4 night Carnival cruise!"*

*"Your entry was drawn about an hour ago . . . ."*

81.     In many instances, Festiva's opening announcements are deceptive and misleading because Festiva fails to disclose the numerous limitations and onerous terms that a consumer must meet in order to take the cruise, nor the added and hidden costs of the cruise, which can total several hundreds of dollars.

82.     In many instances, Festiva's opening announcements are deceptive and misleading because consumers' "entries" were not "selected" or "drawn" or drawn "about an hour ago," as all consumers who complete a drawing or sweepstakes are called.

22

83.     In many instances, Festiva representatives ask consumers a series of personal questions regarding their marital status and income, so that Festiva can determine if it is worth Festiva's while to have the consumer come in to pick up their prize or gift.

84.     In some instances, consumers who do not meet Festiva's qualifications are told that their gift or prize is not available to them because they do not meet Festiva's qualifications.

85.     In some instances, consumers travel to the designated destination to pick up their gift or prize and are then told that they do not meet Festiva's qualifications and are denied their gift or prize.

86.     In other instances, consumers who are not immediately available to attend a Festiva presentation are told they must provide a $25 deposit, secured through a credit card, in order to attend Festiva's presentation at a later date in order to collect their "free" prize or gift.

87.     "Qualified" consumers are usually told they must make an appointment and sit through a 90 or 120 minute "presentation" at a Festiva sales center on the pretext that Festiva wants the consumer to provide "word-of-mouth advertising" to their family and friends.  Festiva sometimes describes such presentations as "relaxing." Festiva does not disclose that in many instances, its so-called "90 or 120 minute presentations" often last four or five hours and involve high pressure sales tactics designed to coerce the consumer into buying thousands of dollars of vacation "points."

88.     Festiva also places outbound telemarketing calls to existing Festiva timeshare owners and members.  In numerous instances, Festiva contacts its

23

members and owners using the pretext of an upcoming or important "owners meeting." This pretext is used in order to lure the consumer to one of Festiva's sales centers or to an area hotel or meeting facility. In other instances, Festiva offers to send representatives to the consumer's home with the important information.

89. Timeshare owners who attend such meetings are usually pressured by Festiva representatives to "convert" their timeshare properties into Festiva "points," not realizing or understanding the consequences of doing so. Festiva representatives falsely tell such timeshare owners that, *inter alia*, (1) their deeds will soon become "worthless" or lose most of their value; (2) the maintenance fees for deeded properties will rise dramatically, whereas Festiva Adventure Club members' fees will remain affordable; (3) resale values of deeded timeshares are plunging; (4) consumers will enjoy greater flexibility and better vacations in the Festiva Adventure Club; and (5) Festiva Adventure Club vacation weeks are easier to rent. In most instances, the opposite has been true, and many timeshare owners who surrendered their deeds to Festiva have been left with no recourse, as Festiva has adamantly refused to return their timeshares even where fraud and deceit has occurred.

90. In most instances, timeshare owners do not "convert" their timeshares into Festiva Adventure Club points, but end up forfeiting their timeshares to Festiva, and paying Festiva thousands of dollars for the privilege of doing so. Thus, Festiva has not only acquired numerous additional timeshares (and their accompanying voting rights) to add to its inventory, it has extracted thousands of dollars from each consumer who was talked into doing so.

24

91. Many consumers who have been called by Festiva and attended Festiva's sales or owners meetings have been elderly or disabled, with limited incomes, and little ability to overcome Festiva's high pressure, fast-talking sales pitches, let alone understand the product. In some cases, consumers who were in their 80s or 90s were talked into converting their timeshares or otherwise buying into 40-year Festiva Adventure Club memberships. Defendants have deceived many elderly consumers in this fashion, and also targeted other vulnerable segments of the population.

### Festiva's Direct Mail Pieces and Sweepstakes

92. Defendants use direct mail and sweepstakes to market to consumers who are not Festiva timeshare owners or members.

93. Since at least 2006, Festiva or its agents have distributed sweepstakes or other printed matter within Tennessee, or sent mail directly to Tennessee consumers' homes to induce the purchase of Festiva goods and services, including timeshares and vacations. Festiva's direct mailings to Tennessee consumers typically state the consumer will be receiving a valuable prize or gift, such as an Android tablet, a cruise, or a vacation.

94. In numerous instances, Festiva has sent mail to Tennessee consumers purporting to be a "**GIFT PICK UP NOTICE**," or similar form of notice, for valuable gifts such as, a "**Touchpad Tablet with Android Software**," advising consumers:

**IT'S YOURS.**
**Compliments of us!**
**Call Today!**
**Pick It Up Tomorrow!**

25

95.     In many instances, the Festiva's **GIFT PICK UP NOTICES** failed to identify Festiva by name and address, and instead, provided a toll free number "**To claim this special offer**." In some instances, the prizes or gifts are represented as new, but turn out to be used items or store returns, or the prize is not of the quality, name brand, or value implied. Some items do not work, and in some instances, Festiva representatives have refused to provide items to consumers attending their appointment.

96.     In other instances, the "prize" requires consumers to pay additional monies, or is subject to such restrictive terms and conditions as to render it worthless. Defendants sometimes tell consumers they must be married, have a minimum amount of household income, or have a major credit card to collect the prize they have been told they have won.

97.     In many instances, consumers who call the toll-free number are told they must sit through a 90 or 120 minute presentation.

98.     In many instances, Festiva's sweepstakes and direct mail pieces do not identify Festiva by name or address, and do not alert consumers to the fact that telemarketers will begin calling them in the near future. In addition, Festiva's sweepstakes forms sometimes fail to display the odds of winning a prize as required by Tennessee law.

99.     By completing a sweepstakes form or responding to a direct mail piece, a consumer did not make an "inquiry or application regarding a product or service offered by" any Defendant, under the TSR's do-not-call requirements. Such sweepstakes forms and mail pieces would not lead a reasonable consumer to expect

26

that, by completing the entry form, the consumer would receive a prompt follow-up call from Festiva. Festiva thus did not have an established business relationship for calls to numerous consumers' numbers on the DNC Registry.

100.    By completing a sweepstakes form or responding to a direct mail piece, a consumer did not provide express written agreement to receive calls made by or on behalf of any Defendant under the TSR's do-not-call requirements. Such sweepstakes forms or direct mail pieces did not advise consumers clearly and conspicuously that, by providing their telephone numbers, they were giving express authorization to be contacted by Festiva for telemarketing purposes. Accordingly, Festiva did not obtain express agreement that clearly evidences the consumer's authorization for calls by or on behalf of any Defendant. Festiva thus did not have an express written agreement for calls to numerous consumers' numbers on the DNC Registry.

### Festiva's High Pressure and Deceptive Sales Presentations

101.    In some instances, Festiva's sales presentations to Tennessee consumers took place at a Tennessee hotel or meeting facility within driving distance of the consumer's home, or in many instances, in the consumer's home. In other instances, Tennessee consumers were lured to Festiva sales offices, usually in North Carolina, South Carolina, or Florida, through promises of expensive prizes or gifts for the consumer, or under false pretenses by telling the consumer that an important "owners meeting" was taking place at an out-of-state Festiva location.

102.    At all material times, Festiva has engaged in high pressure sales presentations, which have included one or more or the following deceptive acts and practices:

27

(1)    falsely representing that sales presentations will not last more than 90 or 120 minutes, but in many instances requiring consumers to stay four, five, or more hours in order to receive their free gift or prize;

(2)    falsely representing that the consumer has won, or will receive, a valuable prize or gift;

(3)    failing to disclose that the cost of the consumer's valuable prize or gift has been added or "packed" into the cost of the offered product or service;

(4)    falsely representing that the "special" deal Festiva is offering is only available on that one day, when in fact, the same deal is regularly offered to all consumers;

(5)    falsely representing that the consumer is getting a "deal" because another Festiva member has surrendered his or her membership or timeshare;

(6)    falsely representing that Festiva routinely "buys back" the timeshare or membership if the consumer no longer desires it;

(7)    falsely representing that Festiva has generous cancellation policies, or misrepresenting applicable cancellation policies;

(8)    failing to disclose that certain Internet-based products and services will not be available to the consumer until after the cancellation period has expired;

(9)    falsely representing that Festiva has a sufficient amount of inventory available to accommodate membership needs;

(10)   falsely representing that consumers will easily be able to book vacations of their choice;

(11)   falsely representing that Festiva will assist consumers in renting their unused timeshare or membership interests;

(12)   falsely representing that Festiva's rental of the member's timeshare or membership interest will offset the related maintenance fees;

(13)   falsely representing that maintenance fees have not increased,

28

have increased only slightly, are reasonable, or are not expected to increase;

(14)    failing to advise consumers of prior "special assessments" Festiva has imposed on its members;

(15)    failing to disclose that consumers may not take any Festiva vacations until their annual or bi-annual maintenance fees are paid in full;

(16)    failing to disclose that a consumer's initial membership purchase is usually insufficient to purchase a reasonable vacation; and

(17)    failing to disclose that consumers will not be purchasing a deeded property interest, nor enjoy the same rights and privileges that deeded timeshare owners enjoy.

## Festiva's Unfair and Deceptive Prize and Travel Promotions

103.    At all material times, Defendants have engaged in unfair or deceptive acts or practices in connection with the sale and marketing of timeshares and vacations to consumers, including through the use of prize and travel promotions, by offering to consumers, or leading consumers to believe that consumers may or will receive a prize as an inducement to purchase goods or services, or otherwise incur a monetary obligation, visit a business, attend or listen to a sales presentation or otherwise contact a salesperson, or otherwise offers travel services to consumers, through the use of one or more of the following unlawful means:

(1)    Failing to clearly and conspicuously state the name and street address of the person making the offer;

(2)    Representing or leading the consumer to believe that the person:

(a)    is or could be a winner, if those contacted have not won or are not eligible to win;

29

(b)    has been "selected" or is otherwise part of a select or special group eligible to receive, claim, or otherwise obtain the prize or travel service, when the consumer has not been selected or is not part of a select or special group;

when, in fact, the offer is simply a promotional plan designed to make contact with prospective buyers;

(3)    Representing that the consumer has won or could win a prize or travel service, has been selected or is eligible to win a prize or travel service or will receive a prize or travel service, when the receipt of the prize or travel service is conditioned upon listening to or observing a sales promotional effort, making a purchase, or incurring any monetary obligation, while failing to clearly and conspicuously disclose at the time of the initial offer of the prize or travel service that an attempt will be made to induce the consumer or person to incur a monetary obligation, including the amount of that monetary obligation;

(4)    Failing to clearly and conspicuously disclose the approximate verifiable retail price of each prize or travel service or the price of any product offered for sale through the promotional program in a position immediately adjacent to the item when the initial offer is in writing;

(5)    Failing to clearly and conspicuously disclose each item's approximate verifiable retail value when the initial offer is verbal;

(6)    Failing to clearly and conspicuously disclose, immediately adjacent to each prize or travel service offered, a statement of the odds, if applicable, in Arabic numerals, of receiving each item offered, when the initial offer is in writing;

(7)    Failing to provide the recipient with a written statement, where applicable, that those offers are not exclusive to the recipient and must disclose to the recipient whether all prizes or travel services will be awarded;

(8)    Failing to clearly and conspicuously disclose a statement of the odds, where applicable, in Arabic numerals, of receiving each item where the initial offer is verbal;

(9)    Failing to make a verbal statement, where applicable, that its offers are not exclusive to the recipient and must disclose to such recipient whether all prizes or travel services will be awarded;

30

(10) Failing to give the recipient a general description of the types and categories of restrictions, qualifications, or other conditions, that must be satisfied before the consumer or person is entitled to receive or use the prize or travel service, or product or service offered; and

(11) Failing to give the recipient an approximate total of all costs, fees or other monetary obligations that must be satisfied before the consumer or person is entitled to receive or use the prize or travel service, or product or service offered.

104. At all material times, Defendants have engaged in unfair or deceptive acts or practices in connection with the sale and marketing of timeshares and vacations to consumers, including through the use of prize and travel promotions, by offering to consumers, either in the initial offer, or before an offer can be accepted, failing to clearly and conspicuously disclose verbally or in writing, or upon request in writing:

(1) A general description of the types and categories of restrictions, qualifications, or other conditions, that must be satisfied before the consumer is entitled to receive or use the prize or travel service, or product or service offered, including:

(a) any deadline by which the recipient must visit the business, attend or listen to the sales presentation or otherwise respond in order to receive the prize or travel service, or product or service offered;

(b) the date or dates on or before which the prize or travel service, product or service offer will terminate or expire and, if applicable, when the prizes or travel services will be awarded;

(c) the approximate duration of any mandatory sales presentation or tour, if applicable;

(d) any other conditions, such as minimum or maximum age qualifications, financial qualifications, or requirements that, if the recipient is married, both husband and wife must be present or respond in order to receive the prize or travel service, or product or service offered; and

31

        (e) all other material rules, terms or restrictions governing an offer that is an inducement to purchase a good, service, or other product or otherwise incur a monetary obligation;

(2)    The refund, exchange, or return policies in regard to any offer that is an inducement to purchase a good, service or other product or otherwise incur a monetary obligation; and

(3)    The approximate total of costs, fees, or other monetary obligations that must be satisfied before the consumer or person is entitled to receive or use the prize or travel service, or product or service offered, including, but not limited to, handling, shopping, delivery, freight, postage or processing fees, charges, or other additional costs for the receipt or use of the prize or travel service, or product or service offered.

105.    At all material times, Defendants have engaged in unfair or deceptive acts or practices in connection with the sale and marketing of timeshares and vacations to consumers, including through the use of prize and travel promotions, by:

(1)    Misrepresenting the rules, terms, restrictions, monetary obligations or conditions of participation in the promotional plan or offer;

(2)    Misrepresenting the features, benefits, standard, quality, grade, or model, of the prize, travel service, or product; and

(3)    Failing to award and distribute the prize, travel service, product or service offered in accordance with the rules, terms, and conditions of the offer or promotional program as stated or disclosed in accordance with Tennessee law.

106.    At all material times, Defendants have engaged in unfair or deceptive acts or practices in connection with the sale and marketing of timeshares and vacations to consumers, including through the use of prize and travel promotions, by, either in its initial offers for a prize or travel service or before the offer is accepted, failing to clearly and conspicuously state verbally, or in writing, and upon

32

request in writing, using or making statements or representations in the main, primary or emphasized portion of the text of a solicitation, promotion, advertisement or other offering that is contradicted in a disclosure that is not easily read, readily noticeable, or presented in small or fine print.

107. At all material times, Defendants have engaged in unfair or deceptive acts or practices in connection with the sale and marketing of timeshares and vacations to consumers, including through the use of prize and travel promotions, by causing consumers to incur monetary obligations in order to determine which, if any, prize or travel service the consumer or person is offered or will receive, or to continue to remain eligible to receive any prize or travel service.

## Additional Unfair or Deceptive Acts or Practices

108. Festiva has designed its presentation and sales process to prevent consumers from understanding their purchases, reviewing documents in private or with an attorney, and timely exercising their cancellation rights. Festiva routinely refuses to permit consumers to take documents away from the sales presentation in order to review them carefully before making a purchasing decision.

109. In many instances, consumers have attempted to exercise their cancellation rights, but have been unable to do so due to an inability to reach Festiva customer service representatives. On some occasions, consumers have reached a Festiva representative who falsely promised an extension of the consumer's cancellation deadline. On other occasions, Festiva has falsely claimed it did not receive consumers' cancellation notices, or did not receive the notice in a timely fashion.

33

110.   In many instances, consumers are not able to access Festiva's travel website during their cancellation period, or until after their cancellation period has expired. Once consumers are able to access the site, such access is on a limited basis, and the consumer must wait another seven days for full access. After gaining full access, many consumers determine that Festiva's product is not worth several thousands of dollars, but are not able to cancel because the cancellation period has expired.

111.   Consumers are often able to find the same or better travel deals by visiting well-known travel websites for free, but consumers cannot log on to Festiva's website to compare the Festiva travel offerings until consumers have entered a lengthy and expensive sales contract and until the cancellation period on that contract has expired.

112.   Festiva fails to disclose that its hotel discounts are not available unless consumers purchase accompanying airfare.

113.   Festiva fails to timely mail its invoices to consumers, and as a result, assesses and collects additional fees from consumers.

114.   When consumers call Festiva to complain or cancel, many consumers have difficulty reaching Festiva due to disconnected lines, unanswered phone calls, busy signals, or disregarded voice mail messages. Consumers who manage to reach Festiva are usually told that their timeshares or vacation clubs cannot be cancelled. Festiva routinely refuses to cancel purchases even when consumers report that Festiva's employees engaged in misleading or deceptive sales tactics, or the consumer presents a bona fide hardship.

34

115.   Festiva's cancellation policies are bogus.  Festiva does not honor its cancellation policies and routinely refuses requests from consumers to cancel timeshares and vacation clubs.  Festiva sometimes finds technical reasons to refuse to honor cancellation requests, or claims the consumer was previously advised of a no-cancellation policy.

116.   In numerous instances after Festiva has refused a consumer's cancellation request, Festiva tells consumers their accounts may be cancelled, but only upon the consumer's payment of an exorbitant cancellation fee, sometimes in excess of $1,000 or 80% of the total contract amount.  Festiva does not disclose these cancellation fees during their telemarketing calls, nor in their written materials or sales presentations.

117.   In numerous instances, when consumers refuse to pay or insist on their right to cancel, Festiva subjects them to frequent abusive and harassing telephone calls, even after consumers continue to insist they owe nothing and ask Festiva to cease calling.

118.   In numerous instances, when consumers refuse to pay or insist on their right to cancel, Festiva threatens consumers with continued collection, referral to collection agencies, ruined credit and lawsuits if consumers do not pay for the timeshares and vacation clubs.

119.   Festiva attempts to collect payments on contracts that were unlawfully formed.

120.   Festiva imposes unfair arbitration clauses in its contracts and has continued to disregard due process concerns brought to its attention by arbitration associations and others.

35

## CONSUMER COMPLAINTS

121. Beginning in 2006 and continuing thereafter, Tennessee authorities began receiving complaints from Tennessee consumers and others regarding Festiva's business practices in connection with Festiva's sale, marketing, and servicing of timeshares, vacations, and membership club. Other law enforcement authorities had already been receiving consumer complaints regarding Festiva since at least 2003.

122. Festiva's business practices have also come under considerable and continuous public scrutiny since at least 2006. *See, e.g.*, FOX 8, *FOX 8 Defenders: Lawsuit Filed Against National Travel Company*, (March 26, 2012), http://www.fox8live.com/Global/story.asp?S=17223701; WGME CBS, *Festiva Investigated* (WGME 13: News on Your Side broadcast July 27, 2010), *available at* http://www.wgme.com/news/features/oys/stories/vid_193.shtml; ABC11 Investigates, *Paradise Lost? Timeshare Plan Under Scrutiny* (WTVD Raleigh-Durham, NC broadcast May 1, 2009), *available at* http://abclocal.go.com/wtvd/story?section=news /abc11_investigates&id=6789555.

123. Consumers who research Festiva on the Internet or through the Better Business Bureau ("BBB"), discover that hundreds, if not thousands, of complaints and negative comments have been filed or posted against Festiva in various complaint forums and agencies.

124. Festiva's business practices have been the subject of government investigations and enforcement actions including *State of Missouri, ex rel., Nixon v. Festiva Resorts, LLC*, No. 08AC-CC00509 (Mo. Cir. Ct. June 25, 2008) (Assurance of

36

Voluntary Compliance) (Festiva agreed to cease seven specified deceptive practices, pay $324,393.70 in consumer restitution, $5,000 in civil penalties and $10,000 in costs and fees); North Carolina Investigative Demand issued to Festiva Resorts March 9, 2012.

125.    Festiva's business practices have also been the subject of consumer litigation including Amended Complaint, *Reeves v. Zealandia Holding Co.*, No. 6:13-cv-597-JA-TBS (M.D. Fla. June 11, 2013), ECF No. 42;  Complaint, *Outer Banks Beach Club Association  v. Festiva Resorts Adventure Club Members' Association*, No. 1:11-cv-246 (W.D.N.C. Sept. 22, 2011), ECF No. 1;  Complaint, *Dwyer v. Festiva Resorts, LLC*, No. 2:11-cv-1985-MLCF-KWR (E.D. La. Aug. 12, 2011), ECF No. 2-1; and Complaint, *Countryman v. Festiva Resorts, LLC*, No. 6:06-cv-3345-GAF (W.D. Mo.  Sept. 1, 2006), ECF No. 1.

126.    To date, thousands of consumers have filed complaints against Festiva with state and federal law enforcement agencies, consumer complaint agencies, online Internet complaint forums, and the BBB.  Over 3,000 consumer complaints have been lodged against the Festiva Entities and reported in the FTC's Consumer Sentinel complaint database, including complaints from Tennessee consumers.

## COUNT I

**False Representations and Inadequate Disclosures in Violation of
TSR, 16 C.F.R. §§ 310.3(a)(1)(i)-(v) and (a)(2)**

127.    In numerous instances, in the course of telemarketing of timeshares and vacation products, Defendants have made, or have caused a telemarketer to make, outbound telephone calls, in which the telemarketer made one or more false representations, or inadequate disclosures including, but not limited to, the

37

following:

      (1)     the consumer had won a prize;

      (2)     the nature and value of the prize;

      (3)     Festiva's association or affiliation with a third party;

      (4)     the consumer had won or would receive free vacation products or benefits;

      (5)     the reason for requesting the consumer to attend a meeting, "owners meeting," or sales presentation;

      (6)     the cost, total cost, or payment terms of the consumer's timeshare, vacation product, or other goods and services; and

      (8)     the identity of Festiva.

128. Defendants' acts and practices as alleged above are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. §§ 310.3(a)(1)(i)-(v) and (a)(2).

## COUNT II

### Failure to Promptly Make Required Oral Disclosures in Violation of the TSR, 16 C.F.R. § 310.4(d)(1)-(3)

129. In numerous instances, in the course of telemarketing timeshares and vacation products, Defendants have made, or have caused a telemarketer to make, outbound telephone calls, in which the telemarketer or message failed to disclose promptly and in a clear and conspicuous manner: (1) the identity of the seller; (2) that the purpose of the call is to sell goods and services; or (3) the nature of the goods or services.

130. Defendants' acts and practices as alleged above are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.4(a)(d)(1)-(3).

38

## COUNT III

### Calling Consumers Who Asked Not to Be Called
### in Violation of the TSR, 16 C.F.R. § 310.4(b)(iii)(A)

131. In numerous instances, in the course of telemarketing of timeshares and vacation products, Defendants have made, or have caused a telemarketer to make, outbound telephone calls, in which the telemarketer has called and continued to place numerous calls to consumers who previously requested them not to call.

132. Defendants' acts and practices as alleged above are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(A).

## COUNT IV

### Failing to Disclose Cancellation Restrictions
### in Violation of the TSR, 16 C.F.R. § 310.3(a)(1)(iii)

133. In numerous instances, in connection with the telemarketing of timeshares and vacation clubs, Defendants have failed to truthfully disclose, in a clear and conspicuous manner, before a consumer pays for the goods or services offered, a statement describing Festiva's cancellation policy.

134. Defendants' acts or practices, as described above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(a)(1)(iii).

## COUNT V

### Violating the National Do Not Call Registry
### 16 C.F.R. § 310.4(b)(1)(iii)(B) and 16 C.F.R. § 310.8(a) – (b)

135. In numerous instances, in connection with the telemarketing of timeshares and vacation clubs, Defendants have engaged in, or caused a telemarketer to engage in, initiating an outbound telephone call to a person's telephone number on the DNC Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(I)(iii)(B).

39

136. Defendants' acts or practices, as described above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.8(a) - (b).

## COUNT VI

### Violations of the Tennessee Consumer Protection Act

137. In numerous instances, in connection with the sale and marketing of timeshares and vacation products, Defendants, together and individually, have committed numerous deceptive acts and practices, including, but not limited to:

(1)    misrepresenting that consumers have won a prize;

(2)    misrepresenting the value of a prize or award;

(3)    misrepresenting Festiva's affiliation;

(4)    concealing or misrepresenting Festiva's identity;

(5)    misrepresenting the costs and fees of Festiva's vacation products;

(6)    charging consumers' credit cards before all material terms and conditions have been clearly and conspicuously disclosed;

(7)    misrepresenting or failing to disclose a cancellation policy;

(8)    enforcing contracts in a manner contrary to state law;

(9)    imposing or extorting high, undisclosed cancellation fees;

(10)    contradicting oral representations through written materials;

(11)    failing to disclose material terms regarding Festiva's timeshares or vacation products;

(12)    falsely stating that consumers existing timeshare interests would lose value if they were not converted to Festiva points;

(13)    failing to disclose that Festiva memberships have little or no value on the resale market;

(14)    misrepresenting or failing to disclose maintenance fees and special assessments;

(15)    falsely representing that maintenance fees or costs would be offset by Festiva's rental of the consumer's property interest;

(16)    failing to deliver goods and services as promised;

(17)    engaging in unwarranted and abusive collections;

40

(18) interfering with, or preventing consumers from disposing of their Festiva memberships;

(19) engaging in high pressure sales tactics;

(20) misrepresenting that an offer is available for that day only;

(21) refusing to permit consumers to confer privately, or consult an attorney;

(22) recording only selected portions of the sales presentations;

(23) violating the TSR, 16 C.F.R. § 310.3 and 16 C.F.R. § 310.4;

(24) failing to provide statutory required disclosures when offering prize, gifts and awards, Tenn. Code Ann. §§ 47-18-120 and 47-18-124;

(25) failing to provide prizes, gifts, and awards as represented and promised;

(26) causing confusion or misunderstanding regarding the authority of a salesperson, representative or agent to negotiate the final terms of the consumer's Festiva purchase as represented by that salesperson;

(27) attempting to enforce contracts that are not valid or binding due to Defendants' violations of state or federal laws, regulations or rules in the procurement of said contracts; and

(28) otherwise engaging in unfair and deceptive acts and practices.

138. Defendants' acts and practices as described above constitute unfair and deceptive acts and practices that violate the following provisions of the TCPA:

(1) Tenn. Code Ann. § 47-18-104(a), which prohibits unfair or deceptive acts or practices affecting the conduct of any trade or commerce;

(2) Tenn. Code Ann. § 47-18-104(b)(l), which prohibits falsely passing off goods or services as those of another;

(3) Tenn. Code Ann. § 47-18-104(b)(2), which prohibits causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(4) Tenn. Code Ann. § 47-18-104(b)(3), which prohibits causing a likelihood of confusion as to affiliation, connection or association with, or certification by, another;

41

(5)    Tenn. Code Ann. § 47-18-104(b)(5), which prohibits representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have, or that a person has a sponsorship approval, status, affiliation or connection that the person does not have;

(6)    Tenn. Code Ann. § 47-18-104(b)(7), which prohibits representing that goods or services are of a particular standard, quality or grade, if they are of another;

(7)    Tenn. Code Ann. § 47-18-104(b)(12), which prohibits representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law;

(8)    Tenn. Code Ann. 47-18-104(b)(14), which prohibits causing confusion or misunderstanding with respect to the authority of a salesperson, representative or agent to negotiate the final terms of a consumer transaction; and

(9)    Tenn. Code Ann. § 47-18-104(b)(27), which prohibits engaging in any other act or practice which is deceptive to the consumer or to any other person.

## COUNT VII

### Violations of the Prize and Travel Promotions Statutes

139.    In numerous instances, in connection with the sale and marketing of timeshares and vacations, Defendants have engaged in unfair or deceptive acts or practices in connection with the sale and marketing of timeshares and vacations to consumers, including through the use of prize and travel promotions, by:

(1)    offering to consumers, or leading consumers to believe that they may or will receive a prize as an inducement to purchase goods or services, or otherwise incur a monetary obligation, visit a business, attend or listen to a sales presentation or otherwise contact a salesperson, or otherwise offers travel services to consumers, through the use of prohibited means;

(2)    offering to consumers, either in the initial offer, or before an offer can be accepted, failing to clearly and conspicuously disclose verbally or in writing, or upon request in writing, statutorily required descriptions, conditions and disclosures;

42

(3)     misrepresenting the rules, terms, restrictions, monetary obligations or conditions of participation in the promotional plan or offer;

(4)     misrepresenting the features, benefits, standard, quality, grade, or model, of the prize, travel service, or product;

(5)     failing to award and distribute the prize, travel service, product or service offered in accordance with the rules, terms and conditions of the offer or promotional program as stated or disclosed in accordance with Tennessee law;

(6)     either in its initial offers for a prize or travel service or, before the offer is accepted, failing to clearly and conspicuously state verbally, or in writing, and upon request in writing, using or making statements or representations in the main, primary or emphasized portion of the text of a solicitation, promotion, advertisement or other offering that is contradicted in a disclosure that is not easily read, readily noticeable or presented in small or fine print; and

(7)     causing consumers to incur monetary obligations in order to determine which, if any, prize or travel service the consumer or person is offered or will receive, or to continue to remain eligible to receive any prize or travel service.

140.    Defendants' acts and practices as described above constitute unfair and deceptive acts and practices in violation of the TCPA's prize and travel and promotion statutes, Tenn. Code Ann. §§ 47-18-120(c) and (d), and 47-18-124(b)-(e).

## COUNT VIII

### Disgorgement of the Assets of Relief Defendants

141.    Relief Defendants 811 Development Corporation, Festiva Sailing Vacations, Inc., Financial Information Services, Inc., Kosmas Group International, Inc., Resort Management Services, Inc., Zealandia Holdings, LLC, and the Various Clayton and Patrick Family Trusts 1 – 10 ("Relief Defendants") are believed to have

43

all received ill-gotten funds or otherwise benefitted from funds that are the proceeds of Defendants' unlawful acts and practices. Relief Defendants have no legitimate claim to the ill-gotten funds in their possession and will be unjustly enriched if they are not required to disgorge the funds or the value of the benefit they received as a result of Defendants' unlawful acts and practices.

142. Relief Defendants should be required to disgorge the ill-gotten funds or the value of the benefit they received as a consequence of Defendants' unlawful acts and practices.

143. For these reasons, Relief Defendants hold the proceeds of Defendants' unlawful acts and practices in a constructive trust for the benefit of injured consumers.

## Consumer Injury

144. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the TSR and the TCPA. In addition, Defendants have been unjustly enriched as a result of such unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## This Court's Power to Grant Relief

145. Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorizes this Court to grant such relief as the Court finds necessary to redress injury to consumers or other persons resulting from Defendants' violations of the TSR, including the rescission and reformation of contracts, and the refund of money.

44

146.    Tenn. Code Ann. § 47-18-108(a) and (b) of the TCPA empower this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of the TCPA.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission of contracts and restitution, and the disgorgement of monies, to prevent and remedy any violation of any provision of law enforced by the Attorney General.

## Prayer for Relief

Therefore, Plaintiff, State of Tennessee, pursuant to Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), Tenn. Code Ann. § 47-18-108(a) and (b), and the Court's own equitable powers, requests that the Court:

A.    Enter judgment against Defendants and in favor of Plaintiff for each violation alleged in this Complaint;

B.    Grant the State such injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief, including, but not limited to, an order freezing assets;

C.    Enter a permanent injunction to prevent future violations of the TSR and the TCPA by Defendants;

D.    Award such relief as the Court finds necessary to redress consumer injury resulting from Defendants' violations of the TSR and the TCPA, including, but not limited to, rescission or reformation of contracts, restitution, refund of monies paid, restoration and return of deeded property interests to consumers, correction of derogatory information in consumer credit files, and disgorgement of ill-gotten gains;

45

E. Declare that all consumer contracts made absent the disclosures required by Tenn. Code Ann. § 47-18-120(c) are null and void, or voidable at the consumer's discretion, restore all such consumers' rights and status quo, and enter a permanent injunction prohibiting Defendants from enforcing any contracts so voided by the Court or the consumer;

F. Adjudge and decree that Defendants have each engaged in the aforementioned acts or practices which violate the TSR and the TCPA;

G. Adjudge and decree that the Defendants were each placed on notice that their aforesaid conduct was in violation of the TSR and the TCPA, and that their continuing violations of the law have been knowing and persistent;

H. Enter an order temporarily or permanently revoking Defendants' business licenses, as well as any other certificates or documents authorizing Defendants to engage in the aforesaid sales and marketing within the State of Tennessee;

I. Make such orders or render such judgments as may be necessary to restore to any consumer or other person any ascertainable losses, including statutory and prejudgment interest, suffered by reason of the alleged violations of the TSR and the TCPA, and requiring that Defendants be taxed with the cost of distributing and administering the same, pursuant to Tenn. Code Ann. § 47-18-108(b)(1);

J. Enter judgment against Defendants and in favor of the State of Tennessee for the reasonable costs and expenses of the investigation and prosecution of Defendants' actions, including attorneys' fees, expert and other witness fees and costs, as provided by Tenn. Code Ann. §§ 47-18-108(a)(5) and (b)(4);

46

K.  Adjudge and decree that each Defendant separately pay civil penalties of not more than $1,000.00 per violation to the State of Tennessee for each violation of the TCPA as provided by Tenn. Code Ann. § 47-18-108(b)(3);

L.  Adjudge and decree that each Defendant separately pay enhanced civil penalties of not more than $10,000 per violation to the State of Tennessee for each violation where a Defendant has knowingly used a method, act, or practice which targets elderly persons and is a violation of the TCPA as provided by Tenn. Code Ann. § 47-18-125;

M.  Adjudge and decree that each Defendant separately pay civil penalties of a minimum of $1,000 to a maximum of 10 times the amount collected or requested by that Defendant for each violation of Tenn. Code Ann. § 47-18-120 as provided by Tenn. Code Ann. §  47-18-120(g);

N.  Adjudge and decree that each Defendant separately pay civil penalties of a minimum of $1,000 to a maximum of 10 times the amount collected or requested by that Defendant in violation of Tenn. Code Ann. § 47-18-124 as provided in Tenn. Code Ann. § 47-18-124(h);

O.  Order that all costs in this case be taxed against Defendants and no costs be taxed to the State as provided in Tenn. Code Ann. §  47-18-116; and

P.  Award the State of Tennessee the costs of bringing this action, and such other and additional relief as the Court may determine to be just and proper.

47

Respectfully submitted,

Robert E. Cooper, Jr. BPR # 010934
Attorney General and Reporter

Olha N. M. Rybakoff, BPR # 24254
Senior Counsel
Jessica Myers, BPR # 25595
Assistant Attorney General
Office of the Attorney General
Consumer Advocate and Protection Div.
425 Fifth Avenue North, 3rd Floor
Nashville, TN 37243
Phone: (615) 532-2590
Fax: (615) 532-2910
olha.rybakoff@ag.tn.gov
jessica.myers@ag.tn.gov
*Attorneys for Plaintiff, State of Tennessee*

DATED:     December 30, 2013

48