UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| STATE OF TENNESSEE, *ex rel.* ROBERT E. COOPER, JR., Attorney General and Reporter, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO.: 2:13-cv-343 |
| ESCAPES!, INC., an Arkansas corporation; ESCAPES TRAVEL CHOICES, LLC, an Arkansas limited liability company; ETOURANDTRAVEL, INC., a Florida corporation; FESTIVA DEVELOPMENT GROUP, LLC, d/b/a Festiva Adventure Club, a Nevada limited liability company; FESTIVA REAL ESTATE HOLDINGS, LLC, f/k/a Festiva Resorts, LLC, a Nevada limited liability company; FESTIVA RESORTS ADVENTURE CLUB MEMBERS' ASSOCIATION, INC., a South Carolina not for profit corporation; HUMAN CAPITAL SOLUTIONS, LLC, f/k/a FESTIVA RESORT SERVICES, INC., a Nevada limited liability company; PATTON HOSPITALITY MANAGEMENT, LLC, f/k/a FESTIVA MANAGEMENT GROUP, LLC, a Nevada limited liability company; RESORT TRAVEL & XCHANGE, LLC, a/k/a RTX, f/k/a FESTIVA TRAVEL & XCHANGE, LLC, f/k/a FTX, a Nevada limited liability company; ZEALANDIA CAPITAL, INC., f/k/a SETI MARKETING, INC., a Nevada corporation; ZEALANDIA HOLDING COMPANY, INC., f/k/a FESTIVA HOSPITALITY GROUP, INC., a Nevada limited liability company; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **BRIEF IN SUPPORT OF MOTION TO STRIKE PARAGRAPHS 121 THROUGH 126 OF THE COMPLAINT** |
| *and* | ) | |

| | |
|---|---|
| DONALD KEITH CLAYTON; HERBERT HOOVER PATRICK, JR.; and RICHARD ALLEN HARTNETT, | ) ) ) |
| all individually, and all also d/b/a 811 Development Corporation, Equivest Vacation Club, Escapes! Escapes, Inc., Escapes Travel Club, LLC, Etourandtravel, Inc., Festiva Adventure Club, Financial Information Services, Inc., Festiva Development Group, Festiva Hospitality Group, Inc., Festiva Resorts Services, Inc., Festiva Resorts Adventure Club Members' Association, Inc., Festiva Resorts, LLC, Festiva Sailing Vacations, Inc., Festiva Travel & Xchange, FTX, Human Capital Solutions, Inc., Kosmas Group International, Inc., Peppertree Vacation Club, Resort Management Services, Inc., Resort Travel & Xchange, LLC, RTX, SETI Marketing, Inc., Zealandia Capital, Inc., Zealandia Holdings, LLC, and Zealandia Holding Company, Inc., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants, | ) ) ) |
| *and* | ) ) |
| 811 DEVELOPMENT CORPORATION, a Florida corporation; FESTIVA SAILING VACATIONS, INC., a Nevada corporation; FINANCIAL INFORMATION SERVICES, INC., a Florida corporation; KOSMAS GROUP INTERNATIONAL, INC., a Florida corporation; RESORT MANAGEMENT SERVICES, INC., a Florida corporation; ZEALANDIA HOLDINGS, LLC, a Nevada limited liability company; and VARIOUS CLAYTON AND PATRICK FAMILY TRUSTS 1-10, | ) ) ) ) ) ) ) ) ) ) ) |
| Relief Defendants. | ) |

Defendants Zealandia Holding Company, Inc., f/k/a Festiva Hospitality Group, Inc.; Patton Hospitality Management, LLC, f/k/a Festiva Management Group, LLC; Festiva Development Group, LLC, d/b/a Festiva Adventure Club ("FDG"); Zealandia Capital, Inc., f/k/a Seti Marketing, Inc.; Resort Travel & Xchange, LLC, f/k/a Festiva Travel & Xchange; Festiva Real Estate Holdings, LLC, f/k/a Festiva Resorts, LLC; Festiva Resorts Adventure Club Members' Association; Escapes Travel Choices, LLC; ETourandTravel, Inc.; Human Capital

2

Solutions, Inc.; Donald K. Clayton; Herbert H. Patrick, Jr.; and Richard Hartnett, and Relief Defendants 811 Development Corporation; Festiva Sailing Vacations, Inc.; Financial Information Services, Inc.; Kosmas Group International, Inc.; Resort Management Services, Inc.; and Zealandia Holdings, LLC (collectively, "Movants"), by and through their undersigned counsel, hereby submit this brief in support of their Motion to Strike Paragraphs 121 through 126 of the Complaint brought by Plaintiff ("the State"), pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

For the reasons explained herein, the Motion should be granted, and paragraphs 121-126 of the Complaint should be stricken in their entirety.

## BACKGROUND

FDG is a Nevada limited liability company whose principal place has been in Asheville, North Carolina but is currently being moved to Orlando, Florida. (Affidavit of Herbert H. Patrick, Jr., ¶ 3). FDG is the developer of a vacation and travel club known as the Festiva Adventure Club. (*Id.*, ¶ 3). The Festiva Adventure Club offers consumers more flexibility than traditional timeshare vacations offer. (*Id.*, ¶ 5). At a traditional timeshare resort, any individual is able to purchase a week in any particular unit. This deeded interest is commonly referred to as an interval, and the purchaser has the right to use that interval one week during each year in perpetuity, subject to the rules and regulations for that resort. (*Id.*, ¶ 4). A timeshare interest offers a purchaser very little flexibility in terms of vacationing opportunities; unless he or she is able to rent out his particular week or secure a trade with a third party exchange company such as Interval International or RCI to travel elsewhere, a purchaser is generally stuck using the same interval, at the same time, each and every year. (*Id.*).

FDG developed the Festiva Adventure Club in 2006. (*Id.*, ¶ 3). FDG obtained thousands of intervals at resorts in desirable vacation locations and deposited such intervals into a third party trust for the benefit of Club members. (*Id.*, ¶ 5). Every interval that is held by the third party trustee is given a point value based on the resort, the type of room, and the time of year. (*Id.*). When consumers purchase Club memberships from FDG, they do not receive deeds. (*Id.*). Rather, they acquire points that are renewed annually and can be used to travel throughout the Club's network of resorts, subject to the Club's rules and regulations. (*Id.*). When any particular Club member wants to take a vacation, he or she can consult the Club's ownership manual or website to see how many points are required to stay in any type of room (such as one-bedroom, two-bedroom, studio, etc.) at any given resort during any given season of the year. (*Id.*).

Sales of the Club memberships occur largely at sales centers operated at certain resorts, none of which are in Tennessee. (*Id.*, ¶ 8). Internal marketing representatives and third-party marketing companies, through mailings, phone calls, and in-person contact, invite potential members to attend sales presentations at these sales centers. (*Id.*). During 2013, FDG conducted over 23,000 tours and Club presentations for persons who were neither already Club members nor timeshare owners at resorts with sales centers, and only 13 percent of tour guests actually purchased memberships in the Club. (*Id.*, ¶ 9). Additionally, timeshare owners having deeded interests at resorts with Club sales centers are also invited to sales presentations, as they may decide to trade in their interests as part of an upgrade into the Club. (*Id.*, ¶ 8). FDG believes that most of the Club purchases by Tennessee consumers occurred while they were already on vacation at or near one of the aforementioned sales centers or they were invited by marketing representatives (employed either by FDG or third-party marketing companies) to travel to Banner Elk, North Carolina to stay at the Blue Ridge Village resort and attend sales presentations there. (*Id.*).

In the latter part of 2012, FDG opened a new sales center in Johnson City, Tennessee for the purpose of marketing the Club to consumers in various states. (*Id.*, ¶ 10). In February 2013, Governor Bill Haslam and Tennessee Department of Economic and Community Development Commissioner Bill Hagerty announced the opening of the new call center with much fanfare as reflected in a press release which noted, in pertinent part:

> "We are thankful for Festiva Hospitality Group's decision to locate in Johnson City and the investment in our state and its citizens," Haslam said. "I'm certain the company will find a welcoming home in Tennessee and the Tri-Cities area as we continue our work to make Tennessee the No. 1 location in the Southeast for high quality jobs."
>
> "Festiva Hospitality Group is another great addition to the state," Hagerty said. "In this globally competitive economic environment, Tennessee's business-friendly reputation continues to be an attractive choice for companies. I am pleased Festiva recognizes this and has chosen to include our state in its path to success."
>
> . . .
>
> "This community has long embraced call centers," Mike Ross, director of marketing, Festiva, said. "So when the opportunity came to find a home that would support growth, Johnson City was an easy decision."
>
> "It has been wonderful to work with Mr. Ross and Festiva Hospitality Group in bringing new jobs to our region," Tom Anderson, president, Carter County Tomorrow, said.
>
> . . .
>
> "Carter County welcomes Festiva. We are excited to have this new company and the employment opportunities it provides for our citizens. I am impressed with Mr. Ross's drive, as well as, his commitment to a rapid expansion of the operation. Both of us look forward to a very lengthy and prosperous community partnership", said Leon Humphrey, Carter County Mayor.

*Id.*, Exh. A.

Evidently not sharing the views of two of its highest-ranking officials, the State, through Attorney General Robert E. Cooper, Jr., filed the present action against FDG and various other Defendants and "Relief Defendants" on December 30, 2013. The State alleges that FDG and the

5

other Defendants have violated the Telemarketing Sales Rule ("TSR") by contacting consumers on the national Do-Not-Call Registry or otherwise failing to provide certain disclosures during telephone communications with consumers. (*See* Complaint, Counts I-V, generally). The State also claims that Defendants have violated the Tennessee Consumer Protection Act ("TCPA") by engaging in "high pressure sales tactics" and by making misrepresentations about the benefits and nature of Club memberships. (*See* Complaint, Counts VI and VII, generally). In addition to seeking injunctive relief, the State asks the Court to revoke Defendants' authority to transact business in the State of Tennessee and to restore to any consumer any losses incurred from the alleged violations of the TSR and TCPA. (*See* Complaint, Prayer for Relief, generally).

Movants unequivocally deny the wrongdoing alleged in the Complaint.

## **ALLEGATIONS TO BE STRICKEN**

In its Complaint, the State includes the following allegations in paragraphs 121 through 126:

121. Beginning in 2006 and continuing thereafter, Tennessee authorities began receiving complaints from Tennessee consumers and others regarding Festiva's business practices in connection with Festiva's sale, marketing, and servicing of timeshares, vacation and membership club. Other law enforcement authorities had already been receiving consumer complaints regarding Festiva since at least 2003.

122. Festiva's business practices have also come under considerable and continuous public scrutiny since at least 2006. *See, e.g.,* FOX 8, *FOX 8 Defenders:Lawsuit Filed Against National Travel Company,* (March 26, 2012), http://www.fox8live.com/Global/story.asp?S=17223701; WGME CBS, *Festiva Investigated* (WGME 13: News on Your Side broadcast July 27, 2010), *available at* http://www.wgme.com/news/features/oys/stories/vid_193.shtml; ABC11 Investigates, *Paradise Lost? Timeshare Plan Under Scrutiny* (WTVD Raleigh-Durham, NC broadcast May 1, 2009), *available at* http://abclocal.go.com/wtvd/story?section=news/abcll_investigates&id=6789555.

123. Consumers who research Festiva on the Internet or through the Better Business Bureau ("BBB"), discover that hundreds, if not thousands, of

complaints and negative comments have been filed or posted against Festiva in various complaint forums and agencies.

124. Festiva's business practices have been the subject of government investigations and enforcement actions including *State of Missouri, ex rel., Nixon v. Festiva Resorts, LLC,* No. 08AC-CC00509 (Mo. Cir. Ct. June 25, 2008) (Assurance of Voluntary Compliance) (Festiva agreed to cease seven specified deceptive practices, pay $324,393.70 in consumer restitution, $5,000 in civil penalties and $10,000 in costs and fees); North Carolina Investigative Demand issued to Festiva Resorts March 9, 2012.

125. Festiva's business practices have also been the subject of consumer litigation including Amended Complaint, *Reeves v. Zealandia Holding Co.,* No.6:13-cv-597-JA-TBS (M.D. Fla. June 11, 2013), ECF No. 42; Complaint, *Outer Banks Beach Club Association v. Festiva Resorts Adventure Club Members' Association,* No. 1:11-cv-246 (W.D.N.C. Sept. 22, 2011), ECF No.1; Complaint, *Dwyer v. Festiva Resorts, LLC,* No. 2:11-cv-1985-MLCF-KWR (E.D. La. Aug. 12,2011), ECF No.2-1; and Complaint, *Countryman v. Festiva Resorts, LLC,* No. 6:06-cv-3345-GAF (W.D. Mo. Sept. 1, 2006), ECF No. 1.

126. To date, thousands of consumers have filed complaints against Festiva with state and federal law enforcement agencies, consumer complaint agencies, online Internet complaint forums, and the BBB. Over 3,000 consumer complaints have been lodged against the Festiva Entities and reported in the FTC's Consumer Sentinel complaint database, including complaints from Tennessee consumers.

Complaint, ¶¶ 121-26 (the "Allegations"). The Allegations are irrelevant and immaterial and should be stricken, as discussed below.

## ARGUMENT

Rule 8 of the Federal Rules of Civil Procedure requires that the State set out the following in its Complaint: (1) "a short and plain statement of the grounds for the court's jurisdiction," (2) "a short and plain statement of the claim showing that the pleader is entitled to relief" and (3) "a demand for relief sought." Fed. R. Civ. P. 8(a)(1)-(3). "A motion to strike is the appropriate remedy for the elimination of redundant, immaterial, impertinent, or scandalous matter in any pleading." *Overnite Transp. Co. v. Int'l Bhd. Of Teamsters*, 168 F. Supp.2d 826,

850 (W.D. Tenn. 2001) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 at 644 (2d ed. 1990)).

Admittedly, motions to strike are generally disfavored, and they should be granted only when the ends of justice require it. *Id*. However, the ends of justice do so require in this case, because the Allegations are completely irrelevant and immaterial for several reasons: (1) they concern not <u>the acts of any Defendants</u>, but rather only alleged <u>complaints about</u> acts of Defendants; (2) they refer to complaints entirely unrelated to Tennessee; (3) they refer to matters entirely unrelated to violations of the TCPA or TSR; and (4) they are patently misleading.

>    1. ***The Allegations are entirely irrelevant because they describe not what the Defendants have actually done or not done, but rather only what complaints have been made against the Defendants, which is obviously irrelevant to the State's claims.***

Obviously, this lawsuit is about what the Defendants have or have not done. In particular, it is about whether the Defendants have done or not done things to violate the TSR and TCPA. The Allegations, however, make no assertions whatsoever as to what the Defendants have or have not done. Instead, they merely make assertions about complaints allegedly made against the Defendants or about negative reporting allegedly about the Defendants. The Allegations say absolutely nothing about the substance of any such complaints or reports, and still less do they make any allegations about the conduct of any Defendants at issue in any such complaints or reports. The Allegations consist solely of secondhand (and perhaps even third-hand) relaying of the mere fact that various complaints or reports were made. But the mere fact that someone lodged a complaint or litigation against some Defendant(s), or reported negatively on some Defendant(s), is patently irrelevant to whether Defendants have committed acts or omissions that make them liable under the TSR and TCPA as alleged.

Put differently, whether the State can prove the Allegations – *i.e.*, whether the State can prove that the alleged complaints and negative reports were actually made – is entirely irrelevant

to whether the State can establish the alleged TSR and TCPA violations. The existence of complaints is not an element to be proven in either the TSR or TCPA. This reality is entirely beyond dispute, as is the resulting conclusion that the Allegations must be stricken as irrelevant and immaterial.

   2. *The Allegations also are irrelevant because they relate to matters having nothing to do with Tennessee.*

Even if the Allegations had set forth not only what complaints and negatively reporting allegedly was made, but rather what Defendants allegedly did in the circumstances underlying the complaints and negative reports, the Allegations still would need to be stricken.

In determining whether the Allegations are relevant or material in any respect, the Court must consider the jurisdictional reach of the State's claims. The State is limited under both the TSR and the TCPA to those actions that occurred <u>within</u> the State of Tennessee. The TSR's limitation is found in 15 U.S.C. § 6103(a), which provides:

> Whenever an attorney general of any State has reason to believe that the interests of <u>the residents of that State</u> have been or are being threatened or adversely affected because any person has engaged or is engaging in a pattern or practice of telemarketing which violates any rule of the Commission under section 6102 of this title [which includes the TSR], the State, as *parens patriae*, may bring a civil action <u>on behalf of its residents</u> in an appropriate district court of the United States to enjoin such telemarketing, to enforce compliance with **[12]** such rule of the Commission, to obtain damages, restitution, or other compensation <u>on behalf of residents of such State</u>, or to obtain such further and other relief as the court may deem appropriate.

15 U.S.C. § 6103(a) (emphasis added). The TCPA has similar jurisdictional restraints, as its express policy is "[t]o protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or policies in the conduct of any trade or commerce <u>in part or wholly within this state</u>." Tenn. Code Ann. § 47-18-102(2) (emphasis added). Tennessee has no power to regulate commerce occurring in other jurisdictions. *See*, *e.g.*, *Standard Oil Co. v. State of Tenn.*, 117 Tenn. 618, 642, 100 S.W. 705, 710 (Tenn. 1907) ("The legislature was cognizant,

9

we must presume, that it had no power to enact laws regulating interstate commerce"). *See also FTC v. Mylan Labs, Inc.*, 62 F. Supp. 2d 25, 51 ("The Court will dismiss all claims by Tennessee under the Trade Practices Act . . . and the Tennessee Consumer Protection Act . . . because both statutes apply only to violations occurring in intrastate commerce").

However, the Allegations' descriptions of specific complaints involve only matters occurring entirely outside Tennessee, and the Allegations' only references to Tennessee are the exceedingly general claims that "Tennessee authorities began receiving complaints from Tennessee consumers" and that some of the complaints in the FTC's complaint database are "complaints from Tennessee consumers." Compl., ¶¶121, 126. Rather than presenting a "plain statement" of the allegations, *see* Fed. R. Civ. P. 8(a)(2), that relate to conduct occurring in or affecting those within the boundaries of Tennessee, the State has chosen to include in its Complaint references to matters in <u>other</u> jurisdictions. *See*, *e.g.*, ¶ 122 (referencing news stories from Louisiana, Maine, and North Carolina); ¶ 123 (referencing internet search results); ¶ 124 (referencing investigations by the States of Missouri and North Carolina); and ¶ 125 (referencing litigation brought by individuals in Florida, Louisiana, North Carolina, and Missouri).

Such matters are wholly irrelevant to a case in which the focus, by law, is limited to what happened in or what is affecting the State of Tennessee. Allegations regarding such extraneous matters are routinely stricken by courts everywhere, including those within this State. *See*, *e.g.*, *Overnite*, 168 F. Supp. 2d 826 (striking parts of a RICO complaint that referred to the defendants' past conduct and history of violence); *Howze v. Encore Capital Group, Inc.*, 2012 U.S. Dist. LEXIS 130857 (E.D. Tenn., July 5, 2012) (striking allegations in Fair Debt Collection Practices Act case that pertained to improper collections methods taken against consumers other than the plaintiff). *See also Low v. Robb*, 2012 U.S. Dist. LEXIS 6836 at *26 (S.D.N.Y., Jan. 20, 2012) ("allegations in a complaint that are based on, or rely on, complaints in other actions that

have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f)"); *Waterbury Hospital v. U.S. Foodservice, Inc. (In Re: US Foodservice Inc.)*, 2009 U.S. Dist. LEXIS 117403 at *90 (D. Conn., Dec. 15, 2009) (allegations regarding other "accounting regularities, as well as the resultant investigations, convictions, or other resolutions, are unrelated to plaintiff's allegations of USF's fraudulent activities involving the VASP System"); *Geschke v. Air Force Ass'n*, 2002 U.S. Dist. LEXIS 19422 at *6 (N.D. Ill., Oct. 8, 2002) ("[t]he fact that cancer insurance has been banned or severely restricted in a number of states is immaterial and irrelevant to the instant claim").

What is relevant is what happened in Tennessee. The State should not concern itself, nor waste the Court's and the parties' time, with things that happened elsewhere. For this reason alone, the Motion to Strike must be granted.

### 3. *The Allegations are inflammatory and unfairly prejudicial.*

The Motion must be granted for the additional reason that the State's reference to other complaints and negative reporting is nothing more than an insinuation that "where there is smoke, there must be fire." This insinuation is squarely intended to divert attention away from the matters actually at issue in this lawsuit and invite the Court (or jury) to draw its conclusions not from explanation and evidence relevant to the State's claims, but rather from impressions that might be formed from second or third-hand information to the effect that complaints and reports (which the State does not even bother to explicate) have been made against the Defendants in other matters.

For example, the State provides no details about the "hundreds, if not thousands, of complaints" posted on the Internet or with the Better Business Bureau ("BBB"), including the identity of the BBB offices involved. This indicates that the State is interested not in presenting any information about such complaints (information that would generally be irrelevant to this

11

lawsuit in any event), but rather only in smearing its way to victory in this case. Such inflammatory, unfairly prejudicial rhetoric is inappropriate in any legal pleading. The Allegations must be stricken.

### 4. *The Allegations are misleading and deceptive.*

Moreover, the Allegations are misleading and outright deceptive, as the State has omitted crucial details. For example, the Fox 8 story from Louisiana referred to in paragraph 122 describes a proposed class action filed against FDG and Festiva Resorts, LLC. However, the two married couples who served as the named plaintiffs in the litigation were ordered to proceed with arbitration pursuant to their purchase contracts. (Declaration of Eli Richardson ("Richardson Decl."), Exhibit 1). Although obtaining certain relief in their respective arbitrations, neither couple prevailed in arbitration on their claim for fraud or deceptive conduct, and there was no finding in either arbitration of any misconduct by the defendants. (Richardson Decl., Exhs. 2 & 3). The two couples voluntarily dismissed the lawsuit before any class was ever certified, (Richardson Decl., Exh. 4), and the district court thereafter rejected their subsequent attempts to reopen the case. (Richardson Decl., Exh. 5). In its apparent zeal to smear Defendants, the State omits such details.

The State also misstates, in paragraph 124, the Assurance of Voluntary Compliance ("AVC") entered into between Festiva Resorts, LLC and the State of Missouri.[1] Festiva Resorts did not agree to "<u>cease</u> seven specified deceptive practices." Festiva Resorts at all times disputed the allegations made by the State of Missouri; it ultimately chose to resolve the matter by agreeing in the AVC not to engage in certain practices that would violate § 407.030 R.S. Mo. (part of the Missouri Merchandising Practices Act). (Richardson Decl., Exh. 6, ¶ 13). There is an important and obvious difference between agreeing to <u>cease</u> certain activity on the one hand and

---

[1] The Circuit Court of Cole County, Missouri, approved the AVC. (Richardson Decl., Exh. 7).

12

agreeing <u>not to engage in</u> such activity on the other. The State blatantly disregards such difference. Moreover, Missouri law expressly states that an AVC "shall not be considered an admission of violation for any purpose." § 407.030 R.S. Mo. The Federal Rules of Evidence exclude such settlements for good reason, *see* Fed. R. Evid. 408, and the State should not be permitted to include such matters here.

The State also neglects to provide important details regarding the "consumer" litigation described in paragraph 125. *Reeves v. Zealandia Holding Co.*, from Florida, has nothing to do with FDG's sales practices or the Festiva Adventure Club, as the State would know had it only read the pleadings in the case. *Reeves* concerns a single timeshare project in Florida, one in which, according to the plaintiffs' own allegations throughout their complaint, the original developer, not FDG or any other Defendant herein, committed fraud. (Richardson Decl., Exh. 8). ZHC was named as a defendant because its wholly-owned subsidiary, FDG, bought the membership interest in the entity (CS CWR Holdings, LLC) that held the developer's rights. (*Id.*, ¶¶ 136 *et seq.*). *Outer Banks Beach Club Association v. Festiva Resorts Adventure Club Members' Association* likewise involved not a single allegation about FDG's or any other Defendant's sales practices. Rather, the *Outer Banks* case concerned FDG's disposal of unused timeshare interests at two North Carolina resorts in an alleged attempt to avoid certain payments supposedly owed to the plaintiffs. (Richardson Decl., Exh. 9, ¶¶ 7, 21). The case was settled, with no finding of wrongdoing on the part of any defendant. (Richardson Decl., Exh. 10). As indicated above, the *Dwyer* case (the proposed class action in Louisiana) was dismissed with no finding of wrongdoing by FDG or anyone else. (Richardson Decl., Exhs. 1-5). Finally, the plaintiffs in *Countryman v. Festiva Resorts, LLC* asserted that Festiva Resorts failed to include in its sales contracts certain disclosures that were required by the Truth-in-Lending Act and Regulation Z. (Richardson Decl., Exh. 11). Festiva Resorts, LLC disputed the claims, and the

13

court entered summary judgment in favor of Festiva Resorts, LLC on all claims. (Richardson Decl., Exh. 12). Somehow, the State mentions none of this.

**CONCLUSION**

If the State has cognizable allegations regarding what the Defendants did or did not do to violate the TSR and TCPA in or affecting the State of Tennessee, the State may make those allegations in its Complaint. But it may not do what it has done in the Allegations – casually toss in references not to Defendants' acts or omissions relevant not to conduct allegedly in violation of the TCPA and TSR, but to the complaints or negative reporting by third parties (without so much as the slightest description of their substance) that, so far as is alleged in the Complaint, generally have nothing to do with the State of Tennessee, the TCPA, or the TSR.

For the reasons stated herein, Movant's Motion to Strike should be granted.

BASS, BERRY & SIMS PLC

BY: */s/ Eli J. Richardson*
Eli J. Richardson (BPR # 23443)
150 Third Avenue South, Suite 2800
Nashville, Tennessee 37201
Telephone: (615) 742-7825
Facsimile: (615) 742-0416
Email: erichardson@bassberry.com

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been served on this the 3rd day of March, 2014, as follows:

Via the Court's ECF system upon:

Olha N.M. Rybakoff, Esq.
Office of the Attorney General
Consumer Advocate & Protection Division
425 Fifth Avenue North, 3rd Floor
Nashville, TN 37243
*ATTORNEYS FOR PLAINTIFF*

Via first-class postage prepaid U.S. Mail upon:

CT Corporation System
800 Gay Street
Suite 2021
Knoxville, TN 37929-9710
*REGISTERED AGENT FOR DEFENDANT ESCAPES!, INC.*

*/s/ Eli J. Richardson*
Eli J. Richardson

12874254.2