United States District Court
Eastern District of Tennessee
Greeneville Division

_____

| | | |
|---|---|---|
| STATE OF TENNESSEE, *ex rel.* HERBERT H. SLATERY III, Attorney General and Reporter, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:13-cv-343 |
| FESTIVA DEVELOPMENT GROUP, INC., f/k/a FESTIVA DEVELOPMENT GROUP, LLC, d/b/a FESTIVA ADVENTURE CLUB, d/b/a FESTIVA RESORTS ADVENTURE CLUB, a Nevada corporation, | ) ) ) ) ) ) | **FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTIVE AND OTHER EQUITABLE AND STATUTORY RELIEF** |
| ETOURANDTRAVEL, INC., f/k/a CAPE CANAVERAL TOUR AND TRAVEL, INC., f/k/a CAPE CANAVERAL CRUISE LINE TOUR AND TRAVEL, INC., a Florida corporation, | ) ) ) ) ) | GREER / CORKER  JURY DEMAND |
| ESCAPES TRAVEL CHOICES, LLC, an Arkansas limited liability company, | ) ) ) | |
| FESTIVA REAL ESTATE HOLDINGS, LLC, f/k/a FESTIVA RESORTS, LLC, a Nevada limited liability company, | ) ) ) ) | |
| FESTIVA RESORTS ADVENTURE CLUB MEMBERS' ASSOCIATION, INC., a South Carolina not for profit corporation, | ) ) ) ) | |
| FESTIVA SAILING VACATIONS, INC., a Nevada corporation, | ) ) ) | |
| HUMAN CAPITAL SOLUTIONS, INC, f/k/a FESTIVA RESORT SERVICES, INC., a Nevada limited liability company, | ) ) ) ) | |
| PATTON HOSPITALITY MANAGEMENT, LLC, f/k/a FESTIVA MANAGEMENT GROUP, LLC, a Nevada limited liability company, | ) ) ) ) | |

2

RESORT TRAVEL & XCHANGE, LLC, a/k/a )
RTX, f/k/a FESTIVA TRAVEL & XCHANGE, )
LLC, f/k/a FTX, Nevada limited liability company, )
                                                )
ZEALANDIA CAPITAL, INC., f/k/a SETI             )
MARKETING, INC., a Nevada corporation,          )
                                                )
ZEALANDIA HOLDING COMPANY, INC., f/k/a )
FESTIVA HOSPITALITY GROUP, INC., a              )
Nevada limited liability company,               )
                                                )
   and                           )
                                                )
DONALD KEITH CLAYTON,                           )
                                                )
HERBERT HOOVER PARTICK, Jr.,                    )
                                                )
RICHARD ALLEN HARTNETT, and                     )
                                                )
J. LANCE CROFT,                                 )
                                                )
all individually, and all also d/b/a            )
                                                )
Festiva, Festiva Adventure Club, Festiva Resorts, )
Festiva Resorts, LLC, Festiva Resorts Adventure )
Club, Festiva Resorts Adventure Club Members'  )
Association, Inc., Festiva Development Group,    )
Festiva Development Group, Inc., Festiva         )
Development Group, LLC, Festiva Hospitality      )
Group, Festiva Hospitality Group, LLC, Festiva   )
Resorts Services, Inc., Festiva Resorts Adventure )
Club Members' Association, Inc., Festiva Sailing )
Vacations, Inc., Festiva Travel & Xchange, FTX,  )
Equivest Vacation Club, Escapes Travel Choices,  )
LLC, Escapes Travel Club, LLC, Etourandtravel,   )
Inc., Human Capital Solutions, Inc., Kosmas Group )
International, Inc., Peppertree Vacation Club, Resort )
Management Services, Inc., Resort Travel &       )
Xchange, LLC, RTX, SETI Marketing, Inc.,         )
Zealandia Capital, Inc., Zealandia Holdings, LLC, )
and Zealandia Holding Company, Inc.,             )
                                                )
                         Defendants,    )
                                                )
    and                      )
                                                )

KOSMAS GROUP INTERNATIONAL, INC., a )
Florida corporation, )
                                                      )
RESORT MANAGEMENT SERVICES, INC., a )
Florida corporation, )
                                                      )
ZEALANDIA HOLDINGS, LLC, a Nevada limited )
liability company, )
                                                      )
THE DON CLAYTON 2012 IRREVOCABLE )
GIFT TRUST, )
                                                      )
HERBERT H. PATRICK, JR., FAMILY )
IRREVOCABLE TRUST, and )
                                                      )
VARIOUS OTHER UNKNOWN CLAYTON AND )
PATRICK FAMILY TRUSTS 1 – 4, )
                                                      )
                               Relief Defendants. )

Plaintiff, State of Tennessee, by and through Attorney General Herbert H. Slatery III

("Attorney General" or "State"), and on behalf of Bill Giannini, Acting Director ("Director") of the

Tennessee Division of Consumer Affairs, alleges:

        1.        The Attorney General brings this civil law enforcement action under the

Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108

("Telemarketing Act"), and the Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. §§

47-18-101-125 ("TCPA") to obtain injunctive relief, rescission or reformation of contracts,

restitution, disgorgement of ill-gotten gains, and other equitable and statutory relief for Defendants'

acts or practices in violation of the Telemarketing Act's Telemarketing Sales Rule ("TSR"), 16

C.F.R. § 310, and the TCPA.

## JURISDICTION AND VENUE

        2.        This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a),

and 15 U.S.C. § 6103(a), and supplemental jurisdiction over the state law claims brought by the

State of Tennessee under 28 U.S.C. § 1367.

3.      Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), 15 U.S.C. § 53(b) and (c), and 15 U.S.C. § 6103(e).

## PLAINTIFF

4.      Plaintiff, State of Tennessee, is one of the fifty sovereign states of the United States.  Herbert H. Slatery III is the Attorney General and Reporter of the State of Tennessee and has been duly appointed to serve as Attorney General by the Tennessee Supreme Court.

5.      The Attorney General is authorized by Section 6103(a) of the Telemarketing Act to file this action as *parens patriae* in federal district court to enjoin violations of the TSR, and by Section 108 of the TCPA, to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, disgorgement of ill-gotten gains, and other equitable and statutory relief for Defendants' acts or practices in violation of the TSR and the TCPA.

6.      The Attorney General and the Director have reason to believe that Defendants have violated and continue to violate the TSR and the TCPA by engaging in, and assisting and facilitating the commission of unfair, deceptive and abusive marketing and sales acts and practices in whole or in part in Tennessee and elsewhere, and that this enforcement action is in the public interest.

## DEFENDANTS

### The Festiva Entities

7.      Defendant FESTIVA DEVELOPMENT GROUP, INC, f/k/a FESTIVA DEVELOPMENT GROUP, LLC, d/b/a FESTIVA, d/b/a FESTIVA ADVENTURE CLUB, d/b/a FESTIVA RESORTS, d/b/a FESTIVA RESORTS ADVENTURE CLUB, is a Nevada corporation with a principal place of business at ONE VANCE GAP ROAD, Asheville, North

Carolina. Festiva Development Group, Inc., has transacted and continues to transact business in this District and is authorized to do business in Tennessee as a foreign corporation.

8.      Defendant ETOURANDTRAVEL, INC., f/k/a CAPE CANAVERAL TOUR AND TRAVEL, INC., f/k/a CAPE CANAVERAL CRUISE LINE TOUR AND TRAVEL, INC., is a Florida corporation with a mailing address of ONE VANCE GAP ROAD, Asheville, North Carolina, and a principal place of business at 3626 Quadrangle Blvd., Suite 300, Orlando, Florida. Etourandtravel, Inc., has transacted and continues to transact business in this District, and is authorized to do business in the State of Tennessee as a foreign corporation.

9.      Defendant ESCAPES TRAVEL CHOICES, LLC, is an Arkansas corporation with a principal place of business at ONE VANCE GAP ROAD, Asheville, North Carolina. Escapes Travel Choices, LLC, has transacted and continues to transact business in this District and is authorized to do business in the State of Tennessee as a foreign limited liability company.

10.      Defendant FESTIVA SAILING VACATIONS, INC., f/k/a ELITE ISLAND YACHTS, INC., is a Nevada corporation with its principal place of business at ONE VANCE GAP ROAD, Asheville, North Carolina. Festiva Sailing Vacations, Inc. has transacted and continues to transact business in this District.

11.      Defendant FESTIVA REAL ESTATE HOLDINGS, LLC, f/k/a FESTIVA RESORTS, LLC, is a Nevada limited liability company with a principal place of business at ONE VANCE GAP ROAD, Asheville, North Carolina. Festiva Real Estate Holdings, LLC, has transacted and continues to transact business in this District and is authorized to do business in Tennessee as a foreign limited liability company.

12.      Defendant FESTIVA RESORTS ADVENTURE CLUB MEMBERS' ASSOCIATION, INC., is a not for profit South Carolina corporation with a principal place of

business at ONE VANCE GAP ROAD, Asheville, North Carolina. Festiva Resorts Adventure Club Members' Association, Inc., has transacted and continues to transact business in this District and is authorized to do business in Tennessee as a foreign corporation.

13.     Defendant HUMAN CAPITAL SOLUTIONS, INC., f/k/a FESTIVA RESORT SERVICES, INC., is a Nevada corporation with its principal place of business at ONE VANCE GAP ROAD, Asheville, North Carolina. Human Capital Resources, Inc., has transacted and continues to transact business in this District.

14.     Defendant PATTON HOSPITALITY MANAGEMENT, LLC, f/k/a FESTIVA MANAGEMENT GROUP, LLC, is a Nevada limited liability company with a principal place of business at ONE VANCE GAP ROAD, Asheville, North Carolina. Patton Hospitality Management, LLC, has transacted and continues to transact business in this District and is authorized to do business in Tennessee as a foreign limited liability company.

15.     Defendant RESORT TRAVEL & XCHANGE, LLC, a/k/a RTX, f/k/a FESTIVA TRAVEL & XCHANGE, LLC, f/k/a FTX, is a Nevada corporation with a principal place of business at 521 College Street, Asheville, North Carolina, and a mailing address at ONE VANCE GAP ROAD, Asheville, North Carolina. Resort Travel & Xchange, LLC, has transacted and continues to transact business in this District and is authorized to do business in Tennessee as a foreign limited liability company.

16.     Defendant ZEALANDIA CAPITAL, INC., f/k/a SETI MARKETING, INC., is a Nevada corporation with a principal place of business at ONE VANCE GAP ROAD, Asheville, North Carolina. Zealandia Capital, Inc., has transacted and continues to transact business in this District and is authorized to do business in the State of Tennessee as a foreign corporation.

17.     Defendant ZEALANDIA HOLDING COMPANY, INC., f/k/a Festiva Hospitality

Group, Inc., is a Nevada corporation with a principal place of business at ONE VANCE GAP ROAD, Asheville, North Carolina. Zealandia Holding Company, Inc., has transacted and continues to transact business in this District.

18.     All the entity defendants named in this Complaint, FESTIVA DEVELOPMENT GROUP, INC., f/k/a Festiva Development Group, LLC, ETOURANDTRAVEL, INC., f/k/a Cape Canaveral Tour and Travel, Inc., f/k/a Cape Canaveral Cruise Line Tour and Travel, Inc., ESCAPES TRAVEL CHOICES, LLC, FESTIVA REAL ESTATE HOLDINGS, LLC, f/k/a Festiva Resorts, LLC, FESTIVA RESORTS ADVENTURE CLUB MEMBERS' ASSOCIATION, INC., HUMAN CAPITAL RESOURCES, INC., f/k/a Festiva Resort Services, Inc., PATTON HOSPITALITY MANAGEMENT, LLC, f/k/a Festiva Management Group, LLC, RESORT TRAVEL & XCHANGE, LLC, a/k/a RTX, f/k/a Festiva Travel & Xchange, LLC, f/k/a FTX, ZEALANDIA CAPITAL, INC., f/k/a SETI Marketing, Inc., ZEALANDIA HOLDING COMPANY, INC., f/k/a Festiva Hospitality Group, Inc. (collectively "Festiva Entities"), along with the Individual Defendants, are alleged in the alternative to have assisted and facilitated in the unlawful acts and practices alleged in this Complaint, and to have received ill-gotten funds that are the proceeds of the unlawful acts or practices alleged in this Complaint, with no legitimate claim to those funds.

### The Individual Festiva Defendants

19.     Defendant DONALD KEITH CLAYTON ("Clayton") is an owner, operator, officer, and principal of the Festiva Entities, and a resident of North Carolina. At all material times, Clayton has been actively involved in the day-to-day operations of the Festiva Entities, and has transacted and continues to transact business in this District. In connection with the matters alleged in this Complaint, Clayton, acting alone or in concert with others, has

formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Festiva Entities, and has assisted in and facilitated the same, including the unlawful acts and practices alleged in this Complaint.

20.     Defendant HERBERT HOOVER PATRICK, JR. ("Patrick") is an owner, operator, officer, and principal of the Festiva Entities, and a resident of North Carolina.  At all material times, Patrick has been actively involved in the day-to-day operations of the Festiva Entities, and has transacted and continues to transact business in this District.  In connection with the matters alleged in this Complaint, Patrick, acting alone or in concert with others, has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Festiva Entities, and has assisted in and facilitated the same, including the unlawful acts and practices alleged in this Complaint.

21.     Defendant RICHARD ALLEN HARTNETT ("Hartnett") is an owner, operator, officer, and principal of the Festiva Entities, and a resident of South Carolina. At all material times, Hartnett has been actively involved in the day-to-day operations of the Festiva Entities, and has transacted and continues to transact business in this District.  In connection with the matters alleged in this Complaint, Hartnett, acting alone or in concert with others, has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Festiva Entities, and has assisted in and facilitated the same, including the unlawful acts and practices alleged in this Complaint.  Clayton, Patrick, and Hartnett, together with the Festiva Entities are collectively "Festiva" or "Defendants."

22.     Defendant J. LANCE CROFT ("Croft") is an owner, operator, officer, and principal of Etourandtravel, Inc., and a resident of Florida.  At all material times, Croft has been actively involved in the day-to-day operations of Etourandtravel, Inc., and more recently, with certain Festiva

Entities including Festiva Development Group, Inc. At all material times, Croft has transacted and continues to transact business in this District, including Etourandtravel's operations in Johnson City, Tennessee. In connection with the matters alleged in this Complaint, Croft, acting alone or in concert with others, has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Etourandtravel, Inc., and certain Festiva Entities including Festiva Development Group, Inc., and has assisted in and facilitated the same, including the unlawful acts and practices alleged in this Complaint. Clayton, Patrick, Hartnett, and Croft, together with the Festiva Entities, are collectively "Festiva" or "Defendants."

## RELIEF DEFENDANTS

23. Relief Defendant KOSMAS GROUP INTERNATIONAL, INC. ("Kosmas"), is a Florida corporation with a mailing address of ONE VANCE GAP ROAD, Asheville, North Carolina, and a principal place of business at 3626 Quadrangle Blvd., Suite 300, Orlando, Florida. On information and belief, Kosmas has transacted and continues to transact business in this District, and has received ill-gotten funds that are the proceeds of the unlawful acts or practices alleged in this Complaint, and it has no legitimate claim to those funds. In the alternative, or in addition, Kosmas has assisted and facilitated some of the unlawful conduct herein alleged.

24. Relief Defendant RESORT MANAGEMENT SERVICES, INC. ("RMS"), is a Florida corporation with a mailing address of ONE VANCE GAP ROAD, Asheville, North Carolina, and a principal place of business at 3626 Quadrangle Blvd., Suite 300, Orlando, Florida. On information and belief, RMS has transacted and continues to transact business in this District, and has received ill-gotten funds that are the proceeds of the unlawful acts or practices alleged in this Complaint, and it has no legitimate claim to those funds. In the alternative, or in addition, RMS has assisted and facilitated some of the unlawful conduct herein alleged.

25. Relief Defendant ZEALANDIA HOLDINGS, LLC, is a Nevada corporation with its principal place of business at ONE VANCE GAP ROAD, Asheville, North Carolina. On information and belief, Zealandia Holdings, LLC, has transacted and continues to transact business in this District, and has received ill-gotten funds that are the proceeds of the unlawful acts or practices alleged in this Complaint, and it has no legitimate claim to those funds. In the alternative, or in addition, Zealandia Holdings, LLC, has assisted and facilitated some of the unlawful conduct herein alleged.

26. Relief Defendant THE DON CLAYTON 2012 IRREVOCABLE GIFT TRUST, upon information and belief, is a family trust created by Defendant Donald Keith Clayton after he became aware of the multistate investigation of certain Defendants named in these proceedings. Clayton is believed to have created such trust for the purpose of diverting monies, including ill-gotten gains derived directly from Tennessee consumers and others from the Entity Defendants that have no legitimate claim to these funds, to this trust. The Don Clayton 2012 Irrevocable Gift Trust voluntarily entered this case as a relief defendant and is believed to hold monies derived directly from Tennessee consumers. In this regard, it has operated as part of all Defendants' common enterprise, and in the alternative, or in addition, has assisted and facilitated some of the unlawful conduct herein alleged.

27. Relief Defendant HERBERT H. PATRICK, JR., FAMILY IRREVOCABLE TRUST, upon information and belief, is a family trust created by Defendant Herbert H. Patrick, Jr., after he became aware of the multistate investigation of certain defendants named in these proceedings. Patrick is believed to have created such trust for the purpose of diverting monies, including ill-gotten gains derived directly from Tennessee consumers and others from the Entity Defendants that have no legitimate claims to these funds, to this trust. The Herbert H. Patrick, Jr., Family Irrevocable Trust voluntarily entered this case as a relief defendant and is believed to

hold monies derived directly from Tennessee consumers.  In this regard, it has operated as part of all Defendants' common enterprise, and in the alternative, or in addition, has assisted and facilitated some of the unlawful conduct herein alleged.

28.     Relief Defendants VARIOUS OTHER CLAYTON AND PATRICK FAMILY TRUSTS 1-4, on information and belief, were created by Clayton and Patrick as a result of learning that Festiva was under investigation by multiple state attorneys general regarding unfair and deceptive business practices.  Since learning of these investigations, Clayton and Patrick have been diverting monies and other assets out of the Festiva Entities and into various known and unknown private family trusts for the benefit of themselves, their spouses, and their children, among others.  Such trusts, in addition to all Relief Defendants, have received monies which include income generated or received by Festiva as a result of unlawful business acts and practices, including those occurring in Tennessee and in this District.  Relief Defendants have received ill-gotten funds that are the proceeds of the unlawful acts or practices alleged in this Complaint, and they have no legitimate claim to those funds.  In the alternative, or in addition, Relief Defendants have assisted and facilitated some of the unlawful conduct herein alleged.

## COMMERCE

29.     At all times relevant to this Complaint, Clayton, Patrick, Hartnett, Croft, and the Festiva Entities have maintained a substantial course of trade or business in the offering for sale and sale of goods or services, including via the telephone, in or affecting the conduct of "trade" or "commerce" in Tennessee and nationwide.

## COMMON ENTERPRISE AND INDIVIDUAL PARTICIPATION

30.     At all material times, Clayton, Patrick, Hartnett, and Croft, individually, and together with the Festiva Entities, have operated together as a common enterprise while engaging

in the unfair, deceptive and abusive acts and practices and other violations of the laws alleged in this Complaint, and have conducted such alleged acts and practices through an interrelated network of entities, affiliates, and aliases that have common or shared owners, employees, executives, advertising, company logos, business practices, legal counsel, letterhead, customer service, collection, expertise, offices, telemarketing licenses, telecommunication providers, Internet providers, testimonials, and telemarketing scripts, and have so comingled funds and assets in conducting the unfair, deceptive and abusive acts and practices described in this Complaint, that each of them is jointly and severally liable for the deceptive and abusive acts and practices and violations of the law alleged below.

31.     Patrick, Clayton, and Hartnett, are also jointly and severally liable for the conduct of the Festiva Entities because each had the authority to formulate, direct, or control the activities of the Festiva Entities, or has participated in the misrepresentations and other misconduct of the Festiva Entities, and knew or should have known of the misrepresentations and other misconduct of the Festiva Entities.

32.     Croft is also jointly and severally liable for the conduct of Etourandtravel, Inc., and certain Festiva Entities including Festiva Development Group, Inc., because he had the authority to formulate, direct, or control the activities of the these entities, or has participated in the misrepresentations and other misconduct of these entities, and knew or should have known of the misrepresentations and other misconduct of Etourandtravel, Inc., and certain Festiva Entities including Festiva Development Group, Inc.

33.     Clayton, Patrick, Hartnett, and Croft, together with the Festiva Entities, are alleged in the alternative to have assisted in and facilitated the unlawful acts and practices alleged in this Complaint, or to have received ill-gotten funds that are the proceeds of the unlawful acts or

practices alleged in this Complaint, and have no legitimate claim to those funds.

## BACKGROUND OF THE FESTIVA ENTITIES

34.     On or about August 14, 2000, Clayton and Patrick formed Festiva Resorts, LLC. At all material times, Festiva Resorts, LLC, has been engaged in the sales and marketing of timeshares and vacations to consumers.  Festiva Resorts, LLC, became a wholly owned subsidiary of Festiva Development Group, LLC ("FDG"), on or about March 29, 2011.  On or about January 30, 2012, Clayton and Patrick, acting through FDG, changed Festiva Resorts, LLC's name to Festiva Real Estate Holdings, LLC ("Festiva Resorts"), and made Hartnett its Vice President.

35.     Clayton and Patrick served as Festiva Resorts, LLC's managing members from its inception until approximately June 26, 2008.  Clayton continues to serve as Festiva Resorts' Chief Executive Officer, and Patrick continues to serve as its President.

36.     Since its inception, and continuing through the present, Festiva Resorts has placed or caused to be placed, outbound telephone calls to Tennessee consumers and others, including outbound calls originating within the State of Tennessee, for the purpose of selling goods or services, including timeshares and vacations.

37.     On or about June 22, 2001, Clayton and Patrick formed Festiva Resort Services, Inc. ("FRS").  At all material times, Clayton and Patrick have served as the owners, operators, officers, and directors of FRS.  On or about May 25, 2005, Hartnett became an officer of FRS. At all material times, FRS has provided administrative support to Clayton, Patrick, and Festiva Resorts, and later, to Hartnett and the Festiva Entities.

38.     At all material times, FRS has employed and supervised personnel working for Clayton, Patrick, Hartnett, and the Festiva Entities, including personnel engaged in the sale and

marketing of goods and services, including timeshares and vacations. On or about December 29, 2006, FRS was acquired by Festiva Hospitality Group, Inc. ("Festiva Hospitality"). On or about January 22, 2013, Clayton and Patrick, acting through Festiva Hospitality (n/k/a Zealandia Holding Company, Inc.), changed FRS' name to Human Capital Solutions, Inc. ("Human Capital").

39.     On or about September 4, 2003, Festiva Resorts registered as a telemarketer with the Federal Trade Commission ("FTC"). At the time of its FTC registration, Festiva Resorts paid for access to over 300 area codes in the United States, which included Tennessee area codes 423, 615, 731, 865, 901, and 931. To date, Festiva Resorts has listed over 60 different telemarketers who were or are authorized to place telemarketing calls on its behalf.

40.     Festiva Resorts telemarketed to Tennessee consumers between approximately 2003 and 2009 without registering as a telemarketer with the Tennessee Regulatory Authority.

41.     On or about July 15, 2004, Clayton and Patrick formed Festiva Hospitality Group, Inc. ("Festiva Hospitality"). At all material times, Clayton and Patrick have served as Festiva Hospitality's owners, operators, officers, and directors. Since its inception, Festiva Hospitality has been engaged in the sales and marketing of timeshares and vacations.

42.     Beginning in 2006, Festiva Hospitality began to acquire ownership and management interests in other Festiva entities. At all material times, Festiva Hospitality has served as a d/b/a name or umbrella organization for other Festiva entities. In 2013, Clayton, Patrick, and Hartnett changed Festiva Hospitality's name to Zealandia Holding Company, Inc., but continued to do business as Festiva Hospitality.

43.     Since its inception, Festiva Hospitality, directly and through the Festiva Entities it owned and controlled, placed or caused to be placed, outbound telephone calls to Tennessee

consumers and others, including telephone calls originating in Tennessee, for the purpose of selling goods or services, including timeshares and vacations.

44.     In May 2008, Hartnett became Vice President of Festiva Hospitality, and continuously served as Vice President until 2013.

45.     On or about March 9, 2005, Clayton and Patrick formed SETI Marketing, Inc. ("SETI"). At all material times, SETI has been engaged in the sale and marketing of goods and services, including timeshares and vacations, and later, in the collection of accounts.

46.     In 2010, Hartnett became an officer of SETI.

47.     On or about February 15, 2012, Clayton, Patrick, and Hartnett changed SETI's name to Zealandia Capital, Inc.

48.     On or about March 24, 2005, Clayton and Patrick formed FDG.  FDG is the declarant for, and administers, the Festiva Adventure Club.  From time to time, FDG has used "Festiva Adventure Club" as an assumed name.

49.     At all material times, FDG has been engaged in the sale and marketing of timeshares and vacations.  On or about June 26, 2008, FDG became the sole managing member of Festiva Resorts, and on or about March 29, 2011, wholly acquired Festiva Resorts.

50.     On or about November 25, 2008, Clayton and Patrick registered FDG in Tennessee as a foreign limited liability company.

51.     On or about June 30, 2009, Clayton and Patrick registered FDG as a telemarketer with the State of Tennessee.  In its Tennessee telemarketing registration, FDG identified "Festiva Resorts" as the name it would use when contacting the public.  FDG did not list any assumed names in its Tennessee telemarketing registration.

52.     In January 2015, Clayton and Patrick converted FDG from a limited liability

company to a corporation, and renamed it Festiva Development Group, Inc., but did not inform the Court or the State of this change.

53.     On or about March 24, 2005, Clayton and Patrick formed Festiva Management Group, LLC ("Festiva Management").  At all material times, Festiva Management has been engaged in operating Festiva properties, including properties allegedly available for use by Festiva Adventure Club members.

54.     In 2007, Clayton and Patrick changed Festiva Management's name to Patton Hospitality Management, LLC, and caused it to become a wholly owned subsidiary of Festiva Hospitality.

55.     When Clayton and Patrick formed Festiva Development in 2005, they also created the Festiva Adventure Club.

56.     The Festiva Adventure Club is a purported interval vacation membership club whereby consumers are supposed to be able to take vacations at Festiva properties based on the number of "points" they own in the Festiva Adventure Club.

57.     On or about November 10, 2011, Clayton and Patrick registered "Festiva Adventure Club" with the Tennessee Secretary of State as an assumed name to be used by FDG.

58.     On or about July 13, 2006, in conjunction with their creation of the Festiva Adventure Club, Clayton and Patrick created the Festiva Resorts Adventure Club Members' Association, Inc. ("FRACMA").  FRACMA operates as a trust which holds, manages, and administers the timeshare interests that are supposed to be available for the use of Festiva Adventure Club members.

59.     At all material times, Clayton, Patrick, Hartnett, and the Festiva Entities have used FRACMA to buy and hold timeshare interests, and to sell or rent the use of those timeshare

interests to members of the public or persons owning use interests in the Festiva Adventure Club.

60.     At all material times, Clayton and Patrick have continuously served as directors of FRACMA, along with various Festiva employees, including, from time to time, Harnett.  On or about December 5, 2008, Clayton and Patrick registered FRACMA in Tennessee as a foreign corporation.

61.     On or about September 28, 2011, Clayton, Patrick, and Hartnett created Festiva Travel & Xchange, LLC, a/k/a FTX.  On or about April 24, 2013, Clayton, Patrick and Hartnett, acting through Zealandia Holding Company, Inc. (f/k/a Festiva Hospitality), registered Festiva Travel & Xchange a/k/a FTX (n/k/a Resort Travel & Xchange a/k/a RTX), in Tennessee as a foreign limited liability company.  Resort Travel & Xchange was created for Festiva Adventure Club members and others to use and exchange vacation benefits.

62.     Since at least 2010, Escapes Travel Choices, LLC, has directly and actively participated in Festiva's sales and marketing of timeshares and vacations, including telemarketing, or has assisted and facilitated the same, and has engaged in the unlawful acts and practices alleged in this Complaint.  During 2013, Patrick became its Chief Executive Officer and serves as one of its directors.

**Etourandtravel, Inc. and its 2001 Agreed Final Judgment with Tennessee**

63.     On or about December 7, 1995, Defendant Etourandtravel, Inc. was incorporated as a Florida corporation under the name Canaveral Cruise Line Tour and Travel, Inc.

64.     On May 2, 1996, Canaveral Cruise Line Tour and Travel, Inc. changed its name to Cape Canaveral Cruise Line Tour and Travel, Inc.

65.     On February 12, 2001, Cape Canaveral Cruise Line Tour and Travel, Inc. changed its name to Cape Canaveral Tour and Travel, Inc.

66. On February 20, 2001, Cape Canaveral Tour and Travel, Inc., still using it former name of Cape Canaveral Cruise Line Tour and Travel, Inc., entered into an Agreed Final Judgment with the State of Tennessee, resolving allegations in the State's complaint of the same date regarding unfair and deceptive business practices in violation of the TCPA, and certain telemarketing and disclosure violations, including alleged violations of the TSR.

67. On January 26, 2006, Cape Canaveral Tour and Travel, Inc., changed its name to Etourandtravel, Inc.

68. Since at least July 6, 2007, Defendant Croft has served as an operator, officer, director, and manager of Etourandtravel, Inc.

69. Upon information and belief, Etourandtravel, Inc. has served as an agent and vendor of Festiva during the relevant time period in this Complaint, and has participated in training Festiva employees and independent contractors in sales and telemarketing activity since that time.

70. Since at least mid-2012, Festiva and Etourandtravel, Inc., operated a telemarketing call center in Johnson City, Tennessee, which made outbound telemarketing calls within Tennessee and called consumers residing outside of Tennessee.

71. Since in or about 2013, Festiva and Zealandia Holding Company, Inc., wholly acquired Etourandtravel, Inc., and since at least September 2013, Defendant Patrick as served as Etourandtravel, Inc.'s director and Chief Executive Officer, and Defendant Croft has served as its President and a director. In addition, Festiva's general counsel, Holly Catherine Claussen, has served as Etourandtravel, Inc.'s director and secretary.

72. At the time Etourandtravel, Inc., was acquired by Zealandia Holding Company, Inc., it had an F rating with the Better Business Bureau ("BBB").

73. Clayton, Patrick, Hartnett, and Croft were all aware of Etourandtravel, Inc.'s F rating with the BBB at the time it was acquired by Zealandia Holding Company, Inc.

74. Since at least 2012, Etourandtravel, Inc., has directly and actively participated in Festiva's sales and marketing of timeshares and vacations, including telemarketing, or has assisted and facilitated the same, and has engaged in the unlawful acts and practices alleged in this Complaint.

75. Prior to its acquisition by Zealandia Holding Company, Inc., Etourandtravel, Inc., was one of FDG's telemarketing vendors.

76. During 2013, Patrick became the Chief Executive Officer of Etourandtravel, Inc., and serves as one of its directors.

77. On May 6, 2014, Etourandtravel, Inc., entered into an Assurance of Voluntary Compliance with the Florida Attorney General's Office to resolve an investigation under the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes.

78. At all times relevant hereto, Zealandia Holding Company, Inc. (f/k/a Festiva Hospitality), wholly owns or maintains a controlling or managerial interest in all Festiva Entities, including Etourandtravel, Inc.

## DEFENDANTS' COURSE OF CONDUCT

79. At all material times, Defendants have been in the business of selling and marketing goods and services, including timeshares and vacations, and in operating and supporting the Festiva Adventure Club. Clayton, Patrick, Hartnett, and more recently Croft, together with the Festiva Entities, directly and through their agents, contact and solicit consumers through, *inter alia*, unsolicited telephone calls, direct mailings to consumers, sweepstakes, solicitation forms, electronic mail, through the Internet, or in person, and have

contracted with one another, and with third parties, to so market and sell such goods and services, including timeshares and vacation products, into Tennessee, and from within Tennessee.

80.    Clayton, Patrick, Hartnett, and more recently Croft, are veterans of the timeshare and vacation industry, and have sold or overseen the sale of hundreds of thousands of dollars of timeshares and vacation products to consumers in Tennessee and elsewhere.

81.    Since at least 2000, Clayton and Patrick, with assistance from Hartnett, began acquiring older, neglected or distressed second or third generation timeshare properties and developer's rights from timeshare owners or developers.

82.    When Festiva Resorts, LLC, was formed in 2000, Clayton and Patrick faced significant difficulties in convincing consumers to purchase timeshare interests in their properties.

83.    Shortly after acquiring its first two timeshare properties from Equivest, Festiva Resorts, LLC, began to generate consumer complaints regarding accelerated collection of Equivest membership fees, which culminated in the involvement of the North Carolina Attorney General in 2003.

84.    Clayton and Patrick began marketing timeshares to Tennessee consumers shortly after forming Festiva Resorts in 2000.

85.    By 2000, the timeshare industry was becoming heavily regulated due to consumer abuses in the market, and most states, including Tennessee, had enacted laws specifically designed to protect consumers purchasing timeshares.

86.    In the mid 2000s, after acquiring a number of timeshares, timeshare interests, and older timeshare properties, Clayton and Patrick, with assistance from Hartnett, decided to create

the Festiva Adventure Club.

87.    The Festiva Adventure Club was based on a "points" system, rather than on direct timeshare purchases by consumers. Consumers who purchased Festiva points would become "members" in the Festiva Adventure Club, and the number of points purchased would correspond to an interest in a real estate trust (FRACMA), which held the title to a number of timeshare weeks in various timeshare resorts.

88.    The timeshare interests held in trust by FRACMA are primarily located in approximately ten states and a few places in the Caribbean.

89.    Festiva Adventure Club members are supposed to be able to use their points to reserve an interval of vacation time from one of the trust resorts.

90.    Throughout the mid 2000s, Clayton, Patrick, and later Hartnett, continued acquiring timeshare interests for FRACMA, including timeshares at the Laurel Point Resort, located near Gatlinburg, Tennessee.

91.    As the Defendants continued to acquire timeshare interests and older, end-of-life resort properties, they also acquired a large captive base of existing timeshare owners, whom they would then solicit to turn in their timeshare interests in exchange for points.

92.    By structuring the Festiva Adventure Club as a points-based membership program, in some instances Clayton, Patrick, Hartnett, and the Festiva Entities, have been able to avoid the application of state timeshare laws and the application of related transparency and accountability requirements in those laws.

93.    The Festiva Adventure Club business model permits Clayton, Patrick, Hartnett, Croft, and the Festiva Entities to avoid accounting to the Festiva Adventure Club membership regarding Festiva's business decisions, allocations of income, and payments of monies to

Festiva's principals, Clayton and Patrick.

94.     Clayton, Patrick, Harnett, Croft, and the Festiva Entities have also obtained

control of the governing councils or boards at particular resorts where they hold a majority

interest, and have caused those governing bodies to enter into lucrative contracts with related

Festiva entities or affiliates, ensuring a continuous and steady income stream for themselves and

their companies.

## THE FTC TELEMARKETING SALES RULE

95.     In 1995, the FTC adopted the original TSR after Congress directed the FTC to

prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the

Telemarketing Act.  The FTC amended the TSR extensively in 2003.  *See* 16 C.F.R. § 310.

96.     The TSR prohibits sellers and telemarketers from misrepresenting, directly or by

implication, in the sale of goods or services, any material aspect of the performance, efficacy,

nature, or central characteristics of the goods or services that are the subject of a sales offer.  16

C.F.R. § 310.3(a)(2)(iii).

97.     Among other things, the 2003 amendments to the TSR established a National Do

Not Call Registry, maintained by the FTC (the "DNC Registry" or "Registry"), of the phone

numbers of consumers who do not wish to receive certain types of telemarketing calls.

98.     Consumers can register their telephone numbers on the Registry without charge

either through a toll-free telephone call or over the Internet at www.donotcall.gov.

99.     Consumers who receive telemarketing calls to their registered numbers can

complain of Registry violations the same way they registered, through a toll-free telephone call,

or over the Internet at www.donotcall.gov, or otherwise by contacting law enforcement

authorities.

100.     Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. § 310.2(u).

101.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to numbers on the Registry in violation of the TSR.  16 C.F.R. § 310.4(b)(1)(iii)(B).

102.     The TSR requires telemarketers making an outbound telephone call to disclose truthfully, promptly, and in a clear and conspicuous manner, among other things, the identity of the seller and the nature of the goods or services.  16 C.F.R. § 310.4(d)(1) and (3).

103.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an "unfair or deceptive act or practice" in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and as such, constitutes a violation of the TCPA. *See* Tenn. Code Ann. § 47-18-115.

## VIOLATIONS OF THE LAW

### Violations of the TSR

<u>Festiva Calls Consumers on the National Do Not Call Registry</u>

104.     In numerous instances, Festiva has called and continues to place numerous calls to consumers who have their phone numbers listed on the DNC Registry.

105.     In numerous instances, Festiva has called and continues to call consumers who have told Festiva they have registered their phone numbers on the DNC Registry.

<u>Festiva Calls Consumers Who Asked Festiva Not to Call</u>

106.     In numerous instances, Festiva has called and continues to call consumers who previously requested that Festiva not call them.

**Festiva's Deceptive Telemarketing Practices**

107. Festiva initiates outbound telephone calls to consumers in Tennessee, and throughout the United States from Tennessee, directly, and through agents, to induce the purchase of Festiva's goods and services, including timeshares and vacations.

108. Each Defendant is a "telemarketer" engaged in "telemarketing," as defined by the TSR, 16 C.F.R. § 310.2.

109. Clayton, Patrick, Hartnett, Croft, and the Festiva Entities have engaged in telemarketing by a plan, program, or campaign conducted to induce the purchase of goods or services by use of one or more telephones and which involves more than one interstate telephone call.

110. In numerous instances, Festiva contacts consumers by telephone to inform them they have won, or been selected to receive, a purportedly valuably prize or gift, ranging from Android tablets and gift cards to cruises and vacations. While the purpose of Festiva's telephone calls is to lure consumers to one of their sales presentations in Tennessee or elsewhere for a lengthy, high pressure sales pitch, Festiva's telemarketing calls initially focus on building excitement regarding the consumer's prize or gift.

111. Since at least 2006, and continuing through the present, the Festiva Entities' telemarketers would excitedly announce words to the following effect, at or near the beginning of outbound calls:

> *"You have been selected to receive a 4 day/4 night*
> *Carnival cruise which you have 12 months to use!"*

> *"You entered to win [a prize] and you have been selected to receive a*
> *4 day/4 night Carnival cruise!"*

> *"Your entry was drawn about an hour ago. . . ."*

112.     In many instances, Festiva's opening announcements are deceptive and misleading because Festiva fails to disclose the numerous limitations and onerous terms that a consumer must meet in order to take the cruise, nor the added and hidden costs of the cruise, which can total several hundreds of dollars.

113.     In many instances, Festiva's opening announcements are deceptive and misleading because consumers' "entries" were not "selected" or "drawn" or drawn "about an hour ago," as all consumers who complete a drawing or sweepstakes are called by Festiva.

114.     In many instances, Festiva representatives ask consumers a series of personal questions regarding their marital status and income, so that Festiva can determine if it is worth Festiva's while to have the consumer come in to pick up their prize or gift.  Such questions are sometimes conducted under the guise of a survey.

115.     In some instances, consumers are not told that before they will be allowed to claim their prize or gift, they will be required to sit through a Festiva "sales presentation" first.

116.     In some instances, consumers are told that before they will be allowed to claim their prize or gift, they will be required to sit visit a Festiva "open house."

117.     In some instances, consumers are not told that the company involved in the "gift or prize," or sales presentation they will be attending, is Festiva, or one of the Festiva Entities.

118.     In some instances, consumers who do not meet Festiva's qualifications are told that their gift or prize is not available to them because they are "not qualified."

119.     In some instances, consumers travel to the designated destination to pick up their gift or prize and are only then told that they do not meet Festiva's qualifications, and are denied their gift or prize.

120.     In some instances, consumers who are not immediately available to attend a

Festiva presentation are told they must provide a deposit, secured through a credit card, in order to attend Festiva's presentation at a later date, in order to collect their "free" prize or gift.

121.    "Qualified" consumers are usually told they must make an appointment and sit through a 90 or 120 minute "presentation" at a Festiva sales center on the pretext that Festiva wants the consumer to provide "word-of-mouth advertising" to their family and friends.

122.    In some instances, Festiva describes its sales presentations as "relaxing."

123.    In many instances, Festiva does not disclose that its so-called "90 or 120 minute presentations" can last four, five, or even six hours or longer.

124.    In many instances, Festiva does not disclose that its presentations involve high pressure sales tactics designed to pressure or coerce the consumer into buying thousands of dollars of vacation "points."

125.    Festiva also places outbound telemarketing calls to existing Festiva timeshare owners and members.

126.    In numerous instances, Festiva contacts its members and owners using the pretext of an upcoming or important "owners meeting."  This pretext is used in order to lure the consumer to one of Festiva's sales centers or to an area hotel or meeting facility in Tennessee.

127.    In some instances, Festiva has offer to send a sales representative to the consumer's home with the "important" information.

128.    Consumers who own existing timeshare interests are usually pressured by Festiva sales representatives to "convert" their timeshares into Festiva "points," not realizing or understanding the consequences of doing so.

129.    Festiva sales representatives falsely tell such timeshare owners that, *inter alia*, (1) their deeds will soon become "worthless" or lose most of their value; (2) the maintenance fees

for deeded properties will rise dramatically, whereas Festiva Adventure Club members' fees will remain affordable; (3) resale values of deeded timeshares are plunging; (4) consumers will enjoy greater flexibility and better vacations in the Festiva Adventure Club; and (5) Festiva Adventure Club vacation weeks are easier to rent.

130.    In most instances, the opposite of Festiva's representations have proven to be true, and many timeshare owners who surrendered their deeds to Festiva have been left with no recourse, as Festiva adamantly refuses to return their timeshares even in cases of fraud and deceit.

131.    In most instances, timeshare owners do not "convert" their timeshares into Festiva Adventure Club points, but end up forfeiting their timeshares to Festiva and paying thousands of dollars to Festiva for the privilege of doing so.  Festiva, in turn, simply adds these newly acquired timeshares to its inventory of timeshares in the FRACMA trust, for the purpose of gaining control or members on certain association boards, and for purported use by other Festiva owners.  Thus, Festiva not only acquires numerous additional timeshares (and their accompanying voting rights) to add to its inventory, it also extracts thousands of dollars from each consumer who was talked into doing so.

132.    Many consumers who have been called by Festiva and attended Festiva's sales or owners meetings have been elderly or disabled, with limited incomes due to retirement or social security, and little ability to overcome Festiva's high pressure, fast-talking sales pitches, let alone understand Festiva's complicated point system and usage rights.

133.    In some cases, elderly consumers who were in their 80s with limited ability to walk or travel were talked into converting their existing timeshares or buying into a 40-year contracts in the Festiva Adventure Club by Festiva's slick, high pressure salespeople.

Defendants have deceived many elderly consumers through their high pressure sales pitches, and have also targeted other vulnerable segments of the population.

134.     Defendants have shown little sympathy for consumers, including elderly consumers, who were deceived or defrauded by their salespeople, and regularly refuse to cancel such contracts when fraud or deception is alleged by the consumer.  In some instances, Defendants have demanded that consumers pay additional thousands of dollars in order to be released from their contracts.

## Festiva's Direct Mail Pieces and Sweepstakes

135.     Defendants use direct mail and sweepstakes to market to consumers who are not Festiva timeshare owners or members.

136.     Since at least 2006, Festiva or its agents have distributed sweepstakes or other printed matter within Tennessee, or sent mail directly to Tennessee consumers' homes to induce them to purchase Festiva's goods and services, including timeshares and vacation products. Festiva's direct mailings to Tennessee consumers typically state the consumer will be receiving a valuable prize or gift, such as a computer tablet, a cruise, or a vacation.

137.     In numerous instances, Festiva has sent mail to Tennessee consumers purporting to be a "**GIFT PICK UP NOTICE**," or similar form of notice, for valuable gifts such as a "**Touchpad Tablet with Android Software**," advising consumers:

**IT'S YOURS.**

**Compliments of us!**

**Call Today!**

**Pick It Up Tomorrow!**

138.     In many instances, the Festiva's direct mail solicitations or **GIFT PICK UP**

**NOTICES** fail to identify Festiva by name and address, and instead, provided a toll free number "**To claim this special offer**."

139.     In some instances, the prizes or gifts represented in Festiva's direct mail solicitations are supposed to be new, but turn out to be used items or store returns, or the prize is not of the quality, name brand, or value implied.  Some items do not work, and in some instances, Festiva representatives have refused to provide the promised items to consumers.

140.     In other instances, the "prize" requires consumers to pay additional monies, or is subject to such restrictive terms and conditions as to render it worthless.  Defendants sometimes tell consumers they must be married, have a minimum amount of household income, or have a major credit card to collect the prize they were told they won.

141.     In many instances, consumers who call the toll-free number are only told then (if at all) that they must sit through a "short," "one hour," "90 minute," or "120 minute" presentation in order to receive their prize or gift.

142.     In many instances, Festiva's sweepstakes and direct mail pieces do not identify Festiva by name or address, and do not clearly and conspicuously alert the consumer to the fact that a Festiva telemarketer will begin calling them in the near future.  In addition, Festiva's sweepstakes forms sometimes fail to display the odds of winning a prize as required by Tennessee law.

143.     By completing a sweepstakes form or responding to a direct mail piece, a consumer did not make an "inquiry or application regarding a product or service offered by" any Defendant, under the TSR's do-not-call requirements.  Such sweepstakes forms and mail pieces would not lead a reasonable consumer to expect that, by completing the entry form, the consumer would receive a prompt follow-up call from Festiva.  Festiva thus did not have an

established business relationship for calls to numerous consumers' numbers on the DNC Registry.

144.     By completing a sweepstakes form or responding to a direct mail piece, a consumer did not provide express written agreement to receive calls made by or on behalf of any Defendant under the TSR's do-not-call requirements.  Such sweepstakes forms or direct mail pieces did not advise consumers clearly and conspicuously that, by providing their telephone numbers, they were giving express authorization to be contacted by Festiva for telemarketing purposes.  Accordingly, Festiva did not obtain express agreement that clearly evidences the consumer's authorization for calls by or on behalf of any Defendant.  Festiva thus did not have an express written agreement for calls to numerous consumers' numbers on the DNC Registry.

### Festiva's High Pressure and Deceptive Sales Presentations

145.     In some instances, Festiva's sales presentations to Tennessee consumers took place at a Tennessee hotel or meeting facility within driving distance of the consumer's home, or in many instances, in the consumer's home.  In other instances, Tennessee consumers were lured to Festiva sales offices, usually in North Carolina, South Carolina, or Florida, through promises of expensive prizes or gifts, or under false pretenses by telling the consumer that an important "owners meeting" was taking place at this out-of-state Festiva location.

146.     In some instances, consumers who have ended up at sales presentations lasting for four, five, or even six hours or longer, including elderly consumers, have not been allowed to go to the bathroom, break for lunch, or otherwise take a break.

147.     In some instances, consumers who have ended up at sales presentations lasting for four, five, or even six hours or longer, including elderly consumers, were not shown their contract documents until the very end of the presentation, were not provided with adequate time

to review their documents, were not provided with any privacy in order to review their documents or discuss them privately, were not provided with an opportunity to review their documents with an attorney, were not permitted to take their documents off premises, or home or to their hotel room for the evening to review, and/or were not provided with a way to access to the documents provided to them on a CD-ROM disc.

148.     At all material times, Festiva has engaged in high pressure sales presentations, which have included one or more or the following deceptive acts and practices:

(1)     falsely representing that sales presentations will not last more than one hour, 90 or 120 minutes, but in many instances requiring consumers to stay four, five, six or more hours in order to receive their free gift or prize;

(2)     falsely representing that the consumer has won, or will receive, a valuable prize or gift;

(3)     failing to disclose that the cost of the consumer's valuable prize or gift has been added or "packed" into the cost of the offered product or service;

(4)     falsely representing that the "special" deal Festiva is offering is only available on that one day, when in fact, the same deal is regularly offered to all consumers;

(5)     falsely representing that the consumer is getting a "deal" because another Festiva member has surrendered his or her membership or timeshare;

(6)     falsely representing that Festiva routinely "buys back" the timeshare or membership if the consumer no longer desires it;

(7)     falsely representing that Festiva has generous cancellation policies, or misrepresenting applicable cancellation policies;

(8)     failing to disclose that certain Internet-based products and services will not be available to the consumer until after the cancellation period has expired;

(9)     falsely representing that Festiva has a sufficient amount of inventory available to accommodate membership needs;

(10)    failing to disclose that certain "VIP" Festiva customers will always have first choice of available resorts, thereby making it impossible for other customers to secure usage at their desired times and locations;

(11)    falsely representing that consumers will easily be able to book vacations of their choice;

(12)    falsely representing that Festiva will assist consumers in renting their unused timeshare or membership interests;

(13)    falsely representing that Festiva's rental of the member's timeshare or membership interest will offset the related maintenance fees;

(14)    falsely representing that maintenance fees have not increased, have increased only slightly, are reasonable, or are not expected to increase;

(15)    failing to advise consumers of prior "special assessments" Festiva has imposed on its members;

(16)    failing to disclose that consumers may not take any Festiva vacations until their annual or bi-annual maintenance fees are paid in full;

(17)    failing to disclose that a consumer's initial membership purchase is usually insufficient to apply to a reasonable vacation; and

(18)   failing to disclose that consumers will not be purchasing a deeded property interest, nor enjoy the same rights and privileges that deeded timeshare owners enjoy.

**Festiva's Unfair and Deceptive Prize and Travel Promotions**

149.   At all material times, Defendants have engaged in unfair or deceptive acts or practices in connection with the sale and marketing of timeshares and vacation products to consumers, including through the use of prize and travel promotions, by offering to consumers, or leading consumers to believe that consumers may or will receive a prize as an inducement to purchase goods or services, or otherwise incur a monetary obligation, visit a business, attend or listen to a sales presentation or otherwise contact a salesperson, or otherwise offers travel services to consumers, through the use of one or more of the following unlawful means:

(1)   Failing to clearly and conspicuously state the name and street address of the person making the offer;

(2)   Representing or leading the consumer to believe that the person:

(a)   is or could be a winner, if those contacted have not won or are not eligible to win;

(b)   has been "selected" or is otherwise part of a select or special group eligible to receive, claim, or otherwise obtain the prize or travel service, when the consumer has not been selected or is not part of a select or special group; when, in fact, the offer is simply a promotional plan designed to make contact with prospective buyers;

(3)   Representing that the consumer has won or could win a prize or travel service, has been selected or is eligible to win a prize or travel service or will receive a prize or travel service, when the receipt of the prize or travel

service is conditioned upon listening to or observing a sales promotional effort, making a purchase, or incurring any monetary obligation, while failing to clearly and conspicuously disclose at the time of the initial offer of the prize or travel service that an attempt will be made to induce the consumer or person to incur a monetary obligation, including the amount of that monetary obligation;

(4)     Failing to clearly and conspicuously disclose the approximate verifiable retail price of each prize or travel service or the price of any product offered for sale through the promotional program in a position immediately adjacent to the item when the initial offer is in writing;

(5)     Failing to clearly and conspicuously disclose each item's approximate verifiable retail value when the initial offer is verbal;

(6)     Failing to clearly and conspicuously disclose, immediately adjacent to each prize or travel service offered, a statement of the odds, if applicable, in Arabic numerals, of receiving each item offered, when the initial offer is in writing;

(7)     Failing to provide the recipient with a written statement, where applicable, that those offers are not exclusive to the recipient and must disclose to the recipient whether all prizes or travel services will be awarded;

(8)     Failing to clearly and conspicuously disclose a statement of the odds, where applicable, in Arabic numerals, of receiving each item where the initial offer is verbal;

(9)     Failing to make a verbal statement, where applicable, that its offers are not

exclusive to the recipient and must disclose to such recipient whether all prizes or travel services will be awarded;

(10) Failing to give the recipient a general description of the types and categories of restrictions, qualifications, or other conditions, that must be satisfied before the consumer or person is entitled to receive or use the prize or travel service, or product or service offered; and

(11) Failing to give the recipient an approximate total of all costs, fees, or other monetary obligations that must be satisfied before the consumer or person is entitled to receive or use the prize or travel service, or product or service offered.

150. At all material times, Defendants have engaged in unfair or deceptive acts or practices in connection with the sale and marketing of timeshares and vacation products to consumers, including through the use of prize and travel promotions, by offering to consumers, either in the initial offer, or before an offer can be accepted, failing to clearly and conspicuously disclose verbally or in writing, or upon request in writing:

(1) A general description of the types and categories of restrictions, qualifications, or other conditions, that must be satisfied before the consumer is entitled to receive or use the prize or travel service, or product or service offered, including:

(a) any deadline by which the recipient must visit the business, attend or listen to the sales presentation, or otherwise respond in order to receive the prize or travel service, or product or service offered;

(b) the date or dates on or before which the prize or travel service, product or service offer will terminate or expire and, if applicable, when the prizes or travel services will be awarded;

      (c)      the approximate duration of any mandatory sales presentation or tour, if applicable;

      (d)      any other conditions, such as minimum or maximum age qualifications, financial qualifications, or requirements that, if the recipient is married, both husband and wife must be present or respond in order to receive the prize or travel service, or product or service offered; and

      (e)      all other material rules, terms or restrictions governing an offer that is an inducement to purchase a good, service, or other product or otherwise incur a monetary obligation;

   (2)      The refund, exchange, or return policies in regard to any offer that is an inducement to purchase a good, service or other product or otherwise incur a monetary obligation; and

   (3)      The approximate total of costs, fees, or other monetary obligations that must be satisfied before the consumer or person is entitled to receive or use the prize or travel service, or product or service offered, including, but not limited to, handling, shopping, delivery, freight, postage or processing fees, charges, or other additional costs for the receipt or use of the prize or travel service, or product or service offered.

151.    At all material times, Defendants have engaged in unfair or deceptive acts or practices in connection with the sale and marketing of timeshares and vacation products to consumers, including through the use of prize and travel promotions, by:

   (1)      Misrepresenting the rules, terms, restrictions, monetary obligations or conditions of participation in the promotional plan or offer;

   (2)      Misrepresenting the features, benefits, standard, quality, grade, or model, of the prize, travel service, or product; and

   (3)      Failing to award and distribute the prize, travel service, product or service

offered in accordance with the rules, terms, and conditions of the offer or promotional program as stated or disclosed in accordance with Tennessee law.

152.     At all material times, Defendants have engaged in unfair or deceptive acts or practices in connection with the sale and marketing of timeshares and vacations to consumers, including through the use of prize and travel promotions, by, either in its initial offers for a prize or travel service or before the offer is accepted, failing to clearly and conspicuously state verbally, or in writing, and upon request in writing, using or making statements or representations in the main, primary or emphasized portion of the text of a solicitation, promotion, advertisement or other offering that is contradicted in a disclosure that is not easily read, readily noticeable, or presented in small or fine print.

153.     At all material times, Defendants have engaged in unfair or deceptive acts or practices in connection with the sale and marketing of timeshares and vacation products to consumers, including through the use of prize and travel promotions, by causing consumers to incur monetary obligations in order to determine which, if any, prize or travel service the consumer or person is offered or will receive, or to continue to remain eligible to receive any prize or travel service.

**Additional Unfair or Deceptive Acts or Practices**

154.     Festiva has designed its presentation and sales process to prevent consumers from understanding their purchases, reviewing documents in private or with an attorney, and timely exercising their cancellation rights.  Festiva routinely refuses to permit consumers to take documents away from the sales presentation in order to review them carefully before making a purchasing decision.

155. In many instances, consumers have attempted to exercise their cancellation rights, but have been unable to do so due to an inability to reach Festiva customer service representatives. On some occasions, consumers have reached a Festiva representative who falsely promised an extension of the consumer's cancellation deadline. On other occasions, Festiva has falsely claimed it did not receive consumers' cancellation notices, or did not receive the notice in a timely fashion.

156. In many instances, consumers are not able to access Festiva's travel website during their cancellation period, or until after their cancellation period has expired. Once consumers are able to access the site, such access is on a limited basis, and the consumer must wait another seven days for full access. After gaining full access, many consumers determine that Festiva's product is not worth several thousands of dollars, but are not able to cancel because the cancellation period has expired.

157. Consumers are often able to find the same or better travel deals by visiting well-known travel websites for free, but consumers cannot log on to Festiva's website to compare the Festiva travel offerings until consumers have entered a lengthy and expensive sales contract and until the cancellation period on that contract has expired.

158. Festiva fails to disclose that its hotel discounts are not available unless consumers purchase accompanying airfare.

159. Festiva fails to timely mail its invoices to consumers, and as a result, assesses and collects additional fees from consumers whose payments Festiva claims are late.

160. When consumers call Festiva to complain or cancel, many consumers have difficulty reaching Festiva due to disconnected lines, unanswered phone calls, busy signals, or disregarded voice mail messages. Consumers who manage to reach Festiva are usually told that

their timeshares or vacation products cannot be cancelled.  Festiva routinely refuses to cancel

purchases even when consumers report that Festiva's employees engaged in misleading or

deceptive sales tactics, or the consumer presents a bona fide hardship.

161.    Festiva's cancellation policies are bogus.  Festiva does not honor its cancellation

policies and routinely refuses requests from consumers to cancel timeshares and vacation

products.  Festiva sometimes finds technical reasons to refuse to honor cancellation requests, or

claims the consumer was previously advised of a no-cancellation policy.

162.    In numerous instances after Festiva has refused a consumer's cancellation request,

Festiva tells consumers their accounts may be cancelled, but only upon the consumer's payment

of an exorbitant cancellation fee, sometimes in excess of $1,000 or 80% of the total contract

amount.  Festiva does not disclose these cancellation fees during its telemarketing calls, nor in its

written materials or sales presentations.

163.    In numerous instances, when consumers refuse to pay or insist on their right to

cancel, Festiva subjects them to frequent abusive and harassing telephone calls, even after

consumers continue to insist they owe nothing and ask Festiva to cease calling.

164.    In numerous instances, when consumers refuse to pay or insist on their right to

cancel, Festiva threatens consumers with continued collection, referral to collection agencies,

ruined credit and lawsuits if consumers do not pay for the timeshares and vacation products.

165.    Festiva attempts to collect payments on contracts that were unlawfully formed.

166.    Festiva imposes unfair arbitration clauses in its contracts and has continued to

disregard due process concerns brought to its attention by arbitration associations and others.

**CONSUMER COMPLAINTS**

167.    Beginning in 2006 and continuing thereafter, Tennessee authorities began

receiving complaints from Tennessee consumers and others regarding Festiva's business

practices in connection with Festiva's sale, marketing, and servicing of timeshares, vacations,

and membership club.  Other law enforcement authorities had already been receiving consumer

complaints regarding Festiva since at least 2003.

168.     Festiva's business practices have also come under considerable and continuous

public scrutiny since at least 2006.  *See, e.g.*, FOX 8, *FOX 8 Defenders: Lawsuit Filed Against*

*National Travel Company*, (March 26, 2012),

http://www.fox8live.com/Global/story.asp?S=17223701; WGME CBS, *Festiva Investigated*

(WGME 13: News on Your Side broadcast July 27, 2010), *available at*

http://www.wgme.com/news/features/oys/stories/vid_193.shtml; ABC11 Investigates, *Paradise*

*Lost? Timeshare Plan Under Scrutiny* (WTVD Raleigh-Durham, NC broadcast May 1, 2009),

*available at* http://abclocal.go.com/wtvd/story? section=news /abc11_investigates&id=6789555.

169.     Consumers who research Festiva on the Internet or through the BBB, discover

that hundreds, if not thousands, of complaints and negative comments have been filed or posted

against Festiva in various complaint forums and agencies.

170.     Festiva's business practices have been the subject of government investigations

and enforcement actions including, but not limited to, *State of Tennessee v. Cape Canaveral*

*Cruise Line Tour and Travel, Inc.*, Case No. 01-508-II (Davidson Cnty. Chancery Ct. Feb. 20,

2001) (Agreed Final Judgment); *State of Missouri, ex rel., Nixon v. Festiva Resorts*, *LLC*, No.

08AC-CC00509 (Mo. Cir. Ct. June 25, 2008) (Assurance of Voluntary Compliance) (Festiva

agreed to cease seven specified deceptive practices, pay $324,393.70 in consumer restitution,

$5,000 in civil penalties and $10,000 in costs and fees); North Carolina Investigative Demand

issued to Festiva Resorts March 9, 2012; *In re Matter of Etourandtravel, Inc*, Florida AG Case

Number L09-3-1109 (May 6, 2014) (Assurance of Voluntary Compliance).

171.     Festiva's business practices have also been the subject of consumer litigation including Complaint, *Lozada v. Etourandtravel, Inc.*, Case No. 1:15-cv-2808-ENV-LB (E.D.N.Y. May 15, 2015); Complaint, *Phillips v. Zealandia Capital, Inc.*, Case No. 1:15-cv-4076 (N.D. Ill. May 8, 2015); Complaint, *Miller v. Etourandtravel, Inc.*, Civil Action No. 2:15-cv-82-JRG-DHI (April 3, 2015); Complaint, *Harman v, Etourandtravel, Inc.*, Case No. 2:15-cv-66-DSC (W.D. Pa. Jan. 15, 2015); Complaint Seeking Damages in Core Adversary Proceeding, *Freidhoff v. Festiva Development Group*, Case No. 14-11593-RAG (Bnk. D. Md. Aug. 29, 2014); Complaint, *Galbraith v. Festiva Development Group, LLC, d/b/a Kosmas Group International, Inc., d/b/a Kosmas Resorts*, Civil Action 8:14-cv-1983-MSS-EAJ (M.D. Fla. Aug. 15, 2014); Amended Complaint, *Reeves v. Zealandia Holding Co.*, No. 6:13-cv-597-JA-TBS (M.D. Fla. June 11, 2013), ECF No. 42; Complaint, *Gonzalez v. Etourandtravel, Inc.*, Case No. 6:13-cv-827-Orl-36TBS (M.D. Fla. May 29, 2013); Complaint, *Outer Banks Beach Club Association  v. Festiva Resorts Adventure Club Members' Association*, No. 1:11-cv-246 (W.D.N.C. Sept. 22, 2011), ECF No. 1; Complaint, *Dwyer v. Festiva Resorts, LLC*, No. 2:11-cv-1985-MLCF-KWR (E.D. La. Aug. 12, 2011), ECF No. 2-1; Verified Complaint, *Conner v. Festiva Development Group, LLC*, Case No. 10-SC-86-0661, Charleston Cnty. Small Claims Ct. March 30, 2010; and Complaint, *Countryman v. Festiva Resorts, LLC*, No. 6:06-cv-3345-GAF (W.D. Mo. Sept. 1, 2006), ECF No. 1.

172.     To date, thousands of consumers have filed complaints against Festiva with state and federal law enforcement agencies, consumer complaint agencies, online Internet complaint forums, and the BBB.  Over 5,000 consumer complaints have been lodged against the Festiva Entities and reported in the FTC's Consumer Sentinel complaint database, including complaints from Tennessee consumers.

## COUNT I

### False Representations and Inadequate Disclosures in Violation of the TSR, 16 C.F.R. §§ 310.3(a)(1)(i)-(v) and (a)(2)

173.    In numerous instances, in the course of telemarketing of timeshares and vacation products, Defendants have made, or have caused a telemarketer to make, outbound telephone calls, in which the telemarketer made one or more false representations, or inadequate disclosures including, but not limited to, the following:

> (1)    the consumer had won a prize;
>
> (2)    the nature and value of the prize;
>
> (3)    Festiva's association or affiliation with a third party;
>
> (4)    the consumer had won or would receive free vacation products or benefits;
>
> (5)    the reason for requesting the consumer to attend a meeting, "owners meeting," or sales presentation;
>
> (6)    the cost, total cost, or payment terms of the consumer's timeshare, vacation product, or other goods and services; and
>
> (8)    the identity of Festiva.

174.    Defendants' acts and practices as alleged above are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. §§ 310.3(a)(1)(i)-(v) and (a)(2).

## COUNT II

### Failure to Promptly Make Required Oral Disclosures in Violation of the TSR, 16 C.F.R. § 310.4(d)(1)-(3)

175.    In numerous instances, in the course of telemarketing timeshares and vacation products, Defendants have made, or have caused a telemarketer to make, outbound telephone calls, in which the telemarketer or message failed to disclose promptly and in a clear and conspicuous manner: (1) the identity of the seller; (2) that the purpose of the call is to sell goods

and services; or (3) the nature of the goods or services.

176.     Defendants' acts and practices as alleged above are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.4(a)(d)(1)-(3).

## COUNT III

### Calling Consumers Who Asked Not to Be Called
### in Violation of the TSR, 16 C.F.R. § 310.4(b)(iii)(A)

177.     In numerous instances, in the course of telemarketing of timeshares and vacation products, Defendants have made, or have caused a telemarketer to make, outbound telephone calls, in which the telemarketer has called and continued to place numerous calls to consumers who previously requested them not to call.

178.     Defendants' acts and practices as alleged above are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(A).

## COUNT IV

### Failing to Disclose Cancellation Restrictions
### in Violation of the TSR, 16 C.F.R. § 310.3(a)(1)(iii)

179.     In numerous instances, in connection with the telemarketing of timeshares and vacation products, Defendants have failed to truthfully disclose, in a clear and conspicuous manner, before a consumer pays for the goods or services offered, a statement describing Festiva's cancellation policy.

180.     Defendants' acts or practices, as described above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(a)(1)(iii).

## COUNT V

### Violating the National Do Not Call Registry
### 16 C.F.R. § 310.4(b)(1)(iii)(B) and 16 C.F.R. § 310.8(a) – (b)

181.     In numerous instances, in connection with the telemarketing of timeshares and

vacation products, Defendants have engaged in, or caused a telemarketer to engage in, initiating an outbound telephone call to a person's telephone number on the DNC Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(I)(iii)(B).

182.     Defendants' acts or practices, as described above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.8(a) - (b).

## COUNT VI

### Failing to Maintain Required Telemarketing Records
### in Violation of the TSR, 16 C.F.R. § 310.5(a)(1), (3)-(5).

183.     In numerous instances, in connection with the telemarketing of timeshares and vacation products, Defendants have failed to maintain proper telemarketing records, including all substantially different advertising, brochures, telemarketing scripts, and promotional materials.

184.     In numerous instances, in connection with the telemarketing of timeshares and vacation products, Defendants have failed to maintain proper telemarketing records, including the name and last known address of each customer, the goods or services purchased, the date such goods or services were shipped or provided, and the amount paid by the customer for the goods or services.

185.     In numerous instances, in connection with the telemarketing of timeshares and vacation products, Defendants have failed to maintain proper telemarketing records, including the name, any ficticious name used, the last known home address and telephone number, and the job titles(s) for all current and former employees directly involved in telephone sales or solicitations.

186.     In numerous instances, in connection with the telemarketing of timeshares and vacation products, Defendants have failed to maintain proper telemarketing records, including all verifiable authorizations or records of express informed consent or express agreement required to

be provided or received under this rule.

187.     Defendants' acts or practices, as described above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.5(a)(1), (3)-(5).

**COUNT VII**

**Violations of the Tennessee Consumer Protection Act**

188.     In numerous instances, in connection with the sale and marketing of timeshares and vacation products, Defendants, together and individually, have committed numerous deceptive acts and practices, including, but not limited to:

(1)     misrepresenting that consumers have won a prize;

(2)     misrepresenting the value of a prize or award;

(3)     misrepresenting Festiva's affiliation;

(4)     concealing or misrepresenting Festiva's identity;

(5)     misrepresenting the costs and fees of Festiva's vacation products;

(6)     charging consumers' credit cards before all material terms and conditions have been clearly and conspicuously disclosed;

(7)     misrepresenting or failing to disclose a cancellation policy;

(8)     enforcing contracts in a manner contrary to state law;

(9)     imposing or extorting high, undisclosed cancellation fees;

(10)    contradicting oral representations through written materials;

(11)    failing to disclose material terms regarding Festiva's timeshares or vacation products;

(12)    failing to disclose hidden costs or onerous terms and conditions of allegedly free trips or gifts;

(13)    misrepresenting that owners meeting would last approximately one hour, but pressuring consumers into enduring sales presentations lasting up to six hours or more;

(14) misrepresenting sales pitches as owners meetings;

(15) falsely stating that consumers existing timeshare interests would lose value if they did not deed their timeshares to Festiva and "convert" to Festiva points;

(16) failing to disclose that Festiva memberships have little or no value on the resale market;

(17) misrepresenting or failing to disclose maintenance fees and special assessments;

(18) falsely representing that maintenance fees or costs would be offset by Festiva's rental of the consumer's property interest;

(19) failing to deliver goods and services as promised;

(20) engaging in unwarranted and abusive collections;

(21) interfering with, or preventing consumers from disposing of their Festiva memberships;

(22) engaging in high pressure sales tactics;

(23) improperly diverting or "gifting" Festiva Adventure Club association fees to other entities or associations owned or operated by Defendants that are in financial difficulty;

(24) providing consumers with the false impression that Defendants own entire resorts when in fact, Defendants have fractional interests in such resorts;

(25) concealing material contract terms in other documents such as checklists, without fully or explaining such terms to consumers;

(26) selling or financing timeshares or vacation products to consumers Defendants knew or should have known could not afford the same;

(27) causing consumers to incur additional debt by offering to finance their "deposit" monies through a high-interest, affinity credit card offered by Defendants;

(28) violating state usury laws by charging interest in excess of state usury caps, and collecting such excess amounts from consumers;

(29) violating Truth in Lending disclosure requirements by charging recurring

service charge fees which are not included in Defendants' Truth-in-Lending disclosures;

(30)    charging consumers who may be late in their payments or allegedly in default certain undisclosed and excessive late fees, interest, and collections fees;

(31)    failing to invoice consumers in a timely manner for monies owed, then assessing late fees against consumers in invoices issued two to three months late;

(32)    misrepresenting that an offer is available for that day only;

(33)    refusing to permit consumers to confer privately, or consult an attorney;

(34)    recording only selected portions of the sales presentations;

(35)    violating the TSR, 16 C.F.R. § 310.3 and 16 C.F.R. § 310.4;

(36)    failing to provide statutory required disclosures when offering prize, gifts and awards, Tenn. Code Ann. §§ 47-18-120 and 47-18-124;

(37)    failing to provide prizes, gifts, and awards as represented and promised;

(38)    causing confusion or misunderstanding regarding the authority of a salesperson, representative or agent to negotiate the final terms of the consumer's Festiva purchase as represented by that salesperson;

(39)    attempting to enforce contracts that are not valid or binding due to Defendants' violations of state or federal laws, regulations or rules in the procurement of said contracts;

(40)    misrepresenting the number of points that would be required to take the types of trips discussed with salespeople;

(41)    telling consumers they are required to finance their purchases with Festiva even though consumers wish to pay cash;

(42)    failing to provide adequate customer service by failing to answer customer service lines, failing to return consumers' telephone calls, and failing to provide truthful and accurate information during customer service telephone calls.

(43)    failing to assist consumers attempting to cancel their contracts within the specified cancellation period;

(44)     falsely telling consumers they had to speak with their sales representative about cancelling their contract;

(45)     misrepresenting availability of locations and ease of booking vacations;

(46)     falsely telling consumers that a good deal had become available because somebody had been foreclosed upon, or had turned in their Festiva membership;

(47)     instilling a false sense of security in consumers by falsely representing the sales person was also an owner of one of Festiva's vacation products;

(48)     engaging in self-dealing and acting in the interests for the Defendants rather than the trusts' members;

(49)     engaging in self-dealing by taking over owners associations or the management of associations and acting in a manner which benefits Defendants rather than the consumers;

(50)     misrepresenting that memberships are a "good investment;"

(51)     misrepresenting that deals are available for that day only;

(52)     selling expensive products to consumers who clearly cannot afford to pay for them;

(53)     failing to clearly and conspicuously disclose a negative option surcharge which add a $65 surcharge to invoices for Festiva Travel Services Trip Protection;

(54)     failing to provide refunds to consumers who did not receive what they paid for;

(55)     misrepresenting material contract terms during the sales process;

(56)     failing to disclose substandard conditions at certain Festiva properties;

(57)     failing to maintain properties leading to their condemnation by government authorities;

(58)     failing to provide consumers with adequate time to review their documents, or with an opportunity to leave with their documents to review them at home, or with an attorney; and

(59)     otherwise engaging in unfair and deceptive acts and practices.

189.    Defendants' acts and practices as described above constitute unfair and deceptive acts and practices that violate the following provisions of the TCPA:

(1)    Tenn. Code Ann. § 47-18-104(a), which prohibits unfair or deceptive acts or practices affecting the conduct of any trade or commerce;

(2)    Tenn. Code Ann. § 47-18-104(b)(l), which prohibits falsely passing off goods or services as those of another;

(3)    Tenn. Code Ann. § 47-18-104(b)(2), which prohibits causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(4)    Tenn. Code Ann. § 47-18-104(b)(3), which prohibits causing a likelihood of confusion as to affiliation, connection or association with, or certification by, another;

(5)    Tenn. Code Ann. § 47-18-104(b)(5), which prohibits representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have, or that a person has a sponsorship approval, status, affiliation or connection that the person does not have;

(6)    Tenn. Code Ann. § 47-18-104(b)(7), which prohibits representing that goods or services are of a particular standard, quality or grade, if they are of another;

(7)    Tenn. Code Ann. § 47-18-104(b)(12), which prohibits representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law;

(8)     Tenn. Code Ann. 47-18-104(b)(14), which prohibits causing confusion

        misunderstanding with respect to the authority of a salesperson,

        representative or agent to negotiate the final terms of a consumer

        transaction; and

(9)     Tenn. Code Ann. § 47-18-104(b)(27), which prohibits engaging in any

        other act or practice which is deceptive to the consumer or to any other

        person.

### COUNT VIII

**Violations of the Prize and Travel Promotions Statutes**

190.    In numerous instances, in connection with the sale and marketing of timeshares
and vacations, Defendants have engaged in unfair or deceptive acts or practices in connection
with the sale and marketing of timeshares and vacations to consumers, including through the use
of prize and travel promotions, by:

(1)     offering to consumers, or leading consumers to believe that they may or

        will receive a prize as an inducement to purchase goods or services, or

        otherwise incur a monetary obligation, visit a business, attend or listen to a

        sales presentation or otherwise contact a salesperson, or otherwise offers

        travel services to consumers, through the use of prohibited means;

(2)     offering to consumers, either in the initial offer, or before an offer can be

        accepted, failing to clearly and conspicuously disclose verbally or in

        writing, or upon request in writing, statutorily required descriptions,

        conditions and disclosures;

(3)     misrepresenting the rules, terms, restrictions, monetary obligations or

conditions of participation in the promotional plan or offer;

(4)     misrepresenting the features, benefits, standard, quality, grade, or model

         of the prize, travel service, or product;

(5)     failing to award and distribute the prize, travel service, product or service

         offered in accordance with the rules, terms and conditions of the offer or

         promotional program as stated or disclosed in accordance with Tennessee

         law;

(6)     either in its initial offers for a prize or travel service or, before the offer is

         accepted, failing to clearly and conspicuously state verbally, or in writing,

         and upon request in writing, using or making statements or representations

         in the main, primary or emphasized portion of the text of a solicitation,

         promotion, advertisement or other offering that is contradicted in a

         disclosure that is not easily read, readily noticeable or presented in small

         or fine print; and

(7)     causing consumers to incur monetary obligations in order to determine

         which, if any, prize or travel service the consumer or person is offered or

         will receive, or to continue to remain eligible to receive any prize or travel

         service.

191.    Defendants' acts and practices as described above constitute unfair and deceptive

acts and practices in violation of the TCPA's prize and travel and promotion statutes, Tenn. Code

Ann. §§ 47-18-120(c) and (d), and 47-18-124(b)-(e).

## COUNT IX

**Disgorgement of the Assets of Relief Defendants**

192.     Relief Defendants Festiva Sailing Vacations, Inc., Kosmas Group International, Inc., Resort Management Services, Inc., Zealandia Holdings, LLC, The Don Clayton 2012 Irrevocable Gift Trust, Herbert H. Patrick, Jr., Family Irrevocable Trust, and the Various Clayton and Patrick Family Trusts 1-4 ("Relief Defendants") are believed to have all received ill-gotten funds or otherwise benefitted from funds that are the proceeds of Defendants' unlawful acts and practices.  Relief Defendants have no legitimate claim to the ill-gotten funds in their possession and will be unjustly enriched if they are not required to disgorge the funds or the value of the benefit they received as a result of Defendants' unlawful acts and practices.

193.     Relief Defendants should be required to disgorge the ill-gotten funds or the value of the benefit they received as a consequence of Defendants' unlawful acts and practices.

194.     For these reasons, Relief Defendants hold the proceeds of Defendants' unlawful acts and practices in a constructive trust for the benefit of injured consumers.

## Consumer Injury

195.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the TSR and the TCPA.  Many consumers were injured by a practice for which they did not bargain.  In the cases of Defendants' unfair acts or practices, small harm occurred to a large number of consumers, and in other instances, substantial harm occurred to a small number of consumers.  Defendants' unfair business practices created clear adverse consequences for consumers that were not accompanied by services or benefits to consumers, or benefits to competition, and consumers could not reasonably avoid substantial injury.  In addition, Defendants have been unjustly enriched as a result of such unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

**This Court's Power to Grant Relief**

196.     Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorizes this Court to grant such relief as the Court finds necessary to redress injury to consumers or other persons resulting from Defendants' violations of the TSR, including the rescission and reformation of contracts, and the refund of money.

197.     Tenn. Code Ann. § 47-18-108(a) and (b) of the TCPA empower this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of the TCPA.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission of contracts and restitution, and the disgorgement of monies, to prevent and remedy any violation of any provision of law enforced by the Attorney General.

**Prayer for Relief**

Therefore, Plaintiff, State of Tennessee, pursuant to Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), Tenn. Code Ann. § 47-18-108(a) and (b), and the Court's own equitable powers, requests that the Court:

A.     Enter judgment against Defendants and in favor of Plaintiff for each violation alleged in this Complaint;

B.     Grant the State such injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief, including, but not limited to, an order freezing assets;

C.     Enter a permanent injunction to prevent future violations of the TSR and the TCPA by Defendants;

D.     Award such relief as the Court finds necessary to redress consumer injury resulting from Defendants' violations of the TSR and the TCPA, including, but not limited to,

rescission or reformation of contracts, restitution, refund of monies paid, restoration and return of deeded property interests to consumers, correction of derogatory information in consumer credit files, and disgorgement of ill-gotten gains;

E.      Declare that all consumer contracts made absent the disclosures required by Tenn. Code Ann. § 47-18-120(c) are null and void, or voidable at the consumer's discretion, restore all such consumers' rights and status quo, and enter a permanent injunction prohibiting Defendants from enforcing any contracts so voided by the Court or the consumer;

F.      Adjudge and decree that Defendants have each engaged in the aforementioned acts or practices which violate the TSR and the TCPA;

G.      Adjudge and decree that the Defendants were each placed on notice that their aforesaid conduct was in violation of the TSR and the TCPA, and that their continuing violations of the law have been knowing and persistent;

H.      Enter an order temporarily or permanently revoking Defendants' business licenses, as well as any other certificates or documents authorizing Defendants to engage in the aforesaid sales and marketing within the State of Tennessee;

I.      Make such orders or render such judgments as may be necessary to restore to any consumer or other person any ascertainable losses, including statutory and prejudgment interest, suffered by reason of the alleged violations of the TSR and the TCPA, and requiring that Defendants be taxed with the cost of distributing and administering the same, pursuant to Tenn. Code Ann. § 47-18-108(b)(1);

J.      Enter judgment against Defendants and in favor of the State of Tennessee for the reasonable costs and expenses of the investigation and prosecution of Defendants' actions, including attorneys' fees, expert and other witness fees and costs, as provided by Tenn. Code

Ann. § 47-18-108(a)(5) and (b)(4);

      K.      Adjudge and decree that each Defendant separately pay civil penalties of not more than $1,000.00 per violation to the State of Tennessee for each violation of the TCPA as provided by Tenn. Code Ann. § 47-18-108(b)(3);

      L.      Adjudge and decree that each Defendant separately pay enhanced civil penalties of not more than $10,000 per violation to the State of Tennessee for each violation where a Defendant has knowingly used a method, act, or practice which targets elderly persons and is a violation of the TCPA as provided by Tenn. Code Ann. § 47-18-125;

      M.      Adjudge and decree that each Defendant separately pay civil penalties of a minimum of $1,000 to a maximum of 10 times the amount collected or requested by that Defendant for each violation of Tenn. Code Ann. § 47-18-120 as provided by Tenn. Code Ann. § 47-18-120(g);

      N.      Adjudge and decree that each Defendant separately pay civil penalties of a minimum of $1,000 to a maximum of 10 times the amount collected or requested by that Defendant in violation of Tenn. Code Ann. § 47-18-124 as provided in Tenn. Code Ann. § 47-18-124(h);

      O.      Order that all costs in this case be taxed against Defendants and no costs be taxed to the State as provided in Tenn. Code Ann. § 47-18-116; and

      P.      Award the State of Tennessee the costs of bringing this action, and such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,


　　/s/　Herbert H. Slatery III
Herbert H. Slatery III, BPR # 9077
Attorney General and Reporter


　　/s/　Olha N.M. Rybakoff
Olha N.M. Rybakoff, BPR # 24254
Jessica Myers, BPR # 25595
Jennifer E. Peacock, BPR # 22227
Carolyn U. Smith, BPR # 17166
OFFICE OF THE ATTORNEY GENERAL
Consumer Advocate and Protection
425 Fifth Avenue North, 3rd Floor
Nashville, TN 37243
Phone: (615) 532-2590
Fax: (615) 532-2910
olha.rybakoff@ag.tn.gov
jessica.myers@ag.tn.gov
jennifer.peacock@ag.tn.gov
carolyn.smith@ag.tn.gov
*Attorneys for Plaintiff, State of Tennessee*


DATED: August 28, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed on August 28, 2015 and that notice of this filing will be sent by operation of the Court's ECF system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF system.

 /s/   Olha N.M. Rybakoff
Olha N.M. Rybakoff (BPR #24254)
*Attorney for Plaintiff, State of Tennessee*